RD&J PROPERTIES, Plaintiff v. LAURALEA-DILTON ENTERPRISES, LLC and DAVID T. NEWTON, Defendants, Third-Party Plaintiffs v. ROBERT E. LEGGETT, III and JAMES C. PITTMAN, Third-Party Defendants

No. COA02-1660

(Filed 17 August 2004)

**1. Appeal and Error— appealability—interlocutory order— Rule 54(b) certification**

Although plaintiff's appeal from the trial court's grant of summary judgment in favor of defendants on plaintiff's claims for breach of contract, fraud, and unfair and deceptive trade practices is an appeal from an interlocutory order since defendants' counterclaims and third-party claims remain pending, the appeal is properly before the Court of Appeals based on the trial court's Rule 54(b) certification.

**2. Contracts— breach of contract—summary judgment**

The trial court did not err by granting summary judgment in favor of defendants on plaintiff's claim for breach of contract arising out of the purchase of two mobile home parks with problematic septic systems even though defendants failed to disclose the existence of a diverter pipe for which there was no permit, because: (1) plaintiff failed to establish that a contract existed between plaintiff and defendant individual; and (2) defendant company's representations and warranties were expressly qualified in that it represented "to the best of its knowledge" and that "it had no knowledge of any noncompliance," and plaintiff failed to offer evidence that the Health Department or anyone else ever informed defendant that the diverter pipe required a permit or violated any regulation or law in any other way.

**3. Fraud— concealment—material misrepresentation—summary judgment—scienter—reasonable reliance**

The trial court did not err by granting summary judgment in favor of defendants on plaintiff's claim for fraud based on concealment and material misrepresentation arising out of the purchase of two mobile home parks with problematic septic systems, because plaintiff forecast insufficient evidence of both defendants' scienter and of its own reasonable reliance when plaintiff failed to inspect the property.

### 4. Unfair Trade Practices— capacity to deceive reasonable businessperson—summary judgment

The trial court did not err by granting summary judgment in favor of defendants on plaintiff's claim for unfair and deceptive trade practices arising out of the purchase of two mobile home parks with problematic septic systems based on defendants' failure to disclose the existence of a diverter pipe because viewed in the light most favorable to plaintiff, defendants' acts did not have the capacity to deceive a reasonable businessperson when: (1) the partners of plaintiff company were sophisticated businessmen who elected to purchase property and a sewage system "as is" even though they had never had the property or system inspected; (2) the phrase "as is" placed plaintiff on notice that it needed to determine the existing condition of the parks; (3) there was a lack of evidence that an inspection would have failed to reveal the existence of the diverter pipe; and (4) defendants disclosed the diverter pipe to the Health Department whose records were available to plaintiff.

Appeal by plaintiff from order and judgment entered 30 September 2002 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 17 September 2003.

*Colombo, Kitchin, Dunn & Ball, L.L.P., by W. Walton Kitchin, for plaintiff-appellant.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, P.L.L.C., by Richard M. Wiggins and Jim Wade Goodman, for defendants/third-party plaintiffs-appellees.*

GEER, Judge.

Plaintiff RD&J Properties ("RD&J") purchased two mobile home parks from defendant Lauralea-Dilton Enterprises, LLC ("Lauralea"). After experiencing problems with the septic system, RD&J sued for breach of contract, fraud, and unfair and deceptive trade practices. RD&J appeals from the trial court's grant of summary judgment to defendants on all of plaintiff's claims. Because RD&J failed to forecast sufficient evidence that it could prove a prima facie case for each of its claims, we hold that the trial court correctly granted summary judgment to defendants and affirm.

**RD&J PROPS. v. LAURALEA-DILTON ENTERS., LLC**

[165 N.C. App. 737 (2004)]

Facts

The materials before the superior court on defendants' motion for summary judgment tended to show the following. The Lauralea and Dilton mobile home parks are located in Cumberland County. At some point in the late 1960s or early 1970s, Sam Byrd, then owner of the parks, installed a pipe leading from the septic system in the Lauralea park to the wastewater treatment facility in the Dilton park. This mechanism, known as the "diverter pipe," was installed without the necessary permits from the North Carolina and Cumberland County regulatory agencies. The purpose of the diverter pipe was to divert the flow of sewage from the septic system to the waste water treatment plant when the existing system could not handle the amount of effluent.

In 1979, defendant David Newton, the sole owner of defendant Lauralea, purchased the parks. In January 1993, Mr. Newton notified the Cumberland County Health Department that all but 30 units in the Lauralea mobile home park were tied onto the treatment plant for the Dilton park. Jane Stevens of the Health Department made a notation of this fact on the Health Department's waste water system plat for the Lauralea park.

Subsequently, Lauralea experienced some problems with the drain field for its septic system. After a recommendation from a Health Department employee that it place more fill dirt in the drain field, the problems were apparently solved. For the period 13 March 1997 through 12 November 1998, a month before the sale to RD&J, the Health Department gave no demerits for the septic system in its regular checks of the parks. In the 29 September 1997 "Inspection of Engineered Subsurface Wastewater System"—the last full inspection of the septic system during Lauralea's ownership—the Health Department indicated the parks' septic system was "properly functional."

Plaintiff RD&J is a North Carolina general partnership in the business of owning and operating mobile home parks. During the events leading to this litigation, RD&J had three general partners: Robert E. Leggett, III, G. David Wood, and James C. Pittman. Mr. Leggett had been a managing partner of several mobile home parks in eastern North Carolina. Mr. Wood had worked as an industrial engineer, owned an equipment rental company, and had invested in two other mobile home parks. Mr. Pittman had worked as a civil engineer and also invested in real estate.

On 4 December 1998, RD&J and defendant Lauralea entered into a Sale and Purchase Agreement (the "Purchase Agreement") in which RD&J agreed to buy the Lauralea and Dilton mobile home parks and various tangible and intangible personal property from defendant Lauralea. The tangible personal property specifically included "all sewer and underground water systems[.]" Paragraph 14 of the Purchase Agreement provided:

14. "As Is" Condition. Buyer represents that it has inspected the two mobile home parks, Lauralea and [Dilton], the Tangible Personal Property and Intangible Property to be sold, and subject to the specific conditions, representations and warranties contained herein, is purchasing all of the Property being purchased "as is", "where is".

The "representations and warranties" at issue in this case include:

17. Building Codes, Zoning, etc. Buyer[1] represents and warrants, to the best of its knowledge, that the use and operation of the Property now is . . . in full compliance with applicable building codes, zoning and land use laws, and other local, state or federal laws and regulations and that all licenses and permits required by any governmental authority having jurisdiction over the Property have been validly issued and are in full force and effect. . . .

. . . .

19. Environmental Matters. Lauralea represents and warrants that it has no knowledge of any noncompliance with any environmental protection, pollution or land use laws, rule, regulations, order or requirements, including but not limited to those pertaining to the handling, generating, treating, sorting or disposing of any hazardous waste or substance, oil or petroleum as related to the subject Property, except as set out in Paragraph 18. Lauralea agrees to indemnify and hold the Buyer harmless against claims, demands and liability, including attorney fees, for any violation of this representation and warranty.

Shortly after the closing, defendant Newton informed Mr. Leggett of the existence of the diverter pipe. RD&J continued to operate the mobile home parks for 18 months after learning about the pipe.

1. It appears that the parties intended this paragraph to refer to "Lauralea" rather than "Buyer." Since all the parties to the appeal have treated this provision as being binding on Lauralea, we do also.

In late 1999, with the arrival of wet weather, RD&J began to experience problems with the septic system at the Lauralea park. Several months later, RD&J had the Lauralea septic system inspected by Hydrostructures, P.A. The Hydrostructures report, dated 6 June 2000, concluded that "our inspection of the treatment system indicates that the various components are structurally sound and capable of performing the tasks for which they were intended. . . . [I]t is my recommendation that the system be allowed to continue operating with a few minor repairs."

In the spring of 2000, officials from state and local agencies informed Mr. Wood that the diverter pipe could not be used and that RD&J risked possible civil and criminal penalties if it was used. The agencies directed RD&J to dismantle and cap the illegal diverter pipe and bring the sewage system at the mobile home parks into compliance with local and state law.

RD&J became delinquent in its payments to defendant Lauralea, which then commenced foreclosure proceedings. On 16 August 2000, RD&J filed a complaint asserting claims for breach of contract, fraud, and unfair and deceptive trade practices. Defendants answered, denying the material allegations, and asserted counterclaims based on RD&J's default on payments. Defendant Lauralea also brought a third-party claim against Wood, Leggett, and Pittman. Lauralea subsequently took a voluntary dismissal as to Mr. Wood. Following completion of discovery, defendants moved for summary judgment on 28 August 2002. The trial court granted summary judgment to defendants on all of plaintiff's claims. Plaintiff has appealed from that order and judgment.

---

[1] We first note that this appeal is interlocutory because defendants' counterclaims and third-party claims remain pending. *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001) (an interlocutory order is one made during the pendency of an action that does not dispose of the entire case). This appeal is, however, properly before us based on the trial court's Rule 54(b) certification. The court entered final judgment as to plaintiff's claims and found that "there is no just reason for delaying the appeal[.]"

## Standard of Review

A trial court's ruling on a motion for summary judgment is reviewed *de novo*, "[s]ince the trial court in entering summary judgment rules only on questions of law[.]" *Virginia Elec. & Power Co. v.*

*Tillett,* 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied,* 317 N.C. 715, 347 S.E.2d 457 (1986). On appeal, this Court's task is to determine whether, on the basis of the materials presented to the trial court, there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. *Oliver v. Roberts,* 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied,* —— N.C. ——, 276 S.E.2d 283 (1981).

In ruling on a motion for summary judgment, a trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart,* 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). The burden is on the moving party to show that there is no triable issue of fact and that he is entitled to judgment as a matter of law. *Id.* In deciding the motion, " 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Caldwell v. Deese,* 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quoting 6 Moore's Federal Practice § 56.15[3], at 2337 (2d ed. 1971)). A plaintiff may not, however, rest upon mere allegations in the pleadings, but instead must come forward with evidence demonstrating that there is a genuine issue for trial. *Glenn-Robinson v. Acker,* 140 N.C. App. 606, 630, 538 S.E.2d 601, 618 (2000), *appeal dismissed and disc. review denied,* 353 N.C. 372, 547 S.E.2d 811 (2001).

### Breach of Contract Claim

**[2]** RD&J's breach of contract claim rests on its contention that by failing to disclose the diverter pipe, for which there was no permit, defendants breached paragraphs 17 and 19 of the Purchase Agreement. "The elements of breach of contract are (1) the existence of a valid contract and (2) breach of the terms of the contract." *Long v. Long,* 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003). RD&J's complaint asserts the claim against both defendant Lauralea and defendant Newton and its brief on appeal does not distinguish between the two defendants. We, however, address each defendant separately.

With respect to defendant Newton, RD&J has failed to establish that a contract existed between RD&J and Newton. The Purchase Agreement that forms the basis for RD&J's breach of contract claim was entered into between Lauralea as seller and RD&J as buyer. Newton signed the agreement once on behalf of Lauralea and not individually. *See Keels v. Turner,* 45 N.C. App. 213, 218, 262 S.E.2d 845, 847 (quoting 19 Am. Jur. 2d, Corporations § 1343 (1965)) (" '[W]here individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer

signs twice, once as an officer and again as an individual.'"), *disc. review denied*, 300 N.C. 197, 269 S.E.2d 624 (1980). Since RD&J has failed to offer evidence of a contract between RD&J and Newton individually, the trial court properly granted summary judgment for Newton on the breach of contract claim.

As for Lauralea, in paragraph 17, Lauralea's representations and warranties were expressly qualified: it represented and warranted only "to the best of its knowledge[.]" Likewise, in paragraph 19, "Lauralea represent[ed] and warrant[ed] that it has no knowledge of any noncompliance . . . ." Since Lauralea's representations were limited in this fashion, in order to prove a breach of contract, RD&J was required to establish that Lauralea knew or should have known that the diverter pipe was not in compliance with applicable regulations and that it required a permit. *See American Transtech Inc. v. U.S. Trust Corp.*, 933 F. Supp. 1193, 1200 (S.D.N.Y. 1996) (defendant could be liable under "best knowledge" warranty if, at the time of representation, it had actual knowledge or, based on documents to which it had access, should have known); *Hirsch v. Feuer*, 299 Ill. App. 3d 1076, 1082, 702 N.E.2d 265, 270 (1998) (complaint met minimum requirements for breach of contract claim when contract contained "best of their knowledge" representation and complaint alleged defendants had actual knowledge of defects).

Here, defendants have presented evidence that defendant Newton had no knowledge that the diverter pipe required a permit or violated any other law or regulation. Defendant Newton's affidavit states:

> At the time the contract . . . was signed, and at the closing of the transaction . . . , I had no reason to believe that the existence or use of the diverter pipe was in violation of any building codes, zoning or land use laws, or any other local, state or federal laws and regulations. . . . In fact, in early 1993, I informed the Cumberland County Health Department of the existence of the diverter pipe . . . . No one from the Cumberland County Health Department, nor any other person, ever informed me prior to the closing of the sale of the [property] that the existence or use of the diverter pipe was in anyway [sic] illegal.

Defendant Newton's assertions are corroborated by the affidavit of Jane Stevens, a longtime employee of the Cumberland County Health Department. Ms. Stevens stated that in January 1993, defendant Newton informed her that "all but 30 units in the Lauralea mobile

home park were tied onto the treatment plant for the adjoining Dilton mobile home park." Ms. Stevens further stated that she made a note of this on the Health Department's waste water system plat for the Lauralea mobile home park, indicating: "30 mh's served by onsite septic . . . . Others are tied onto Dilton treatment plant." Further, despite repeated inspections of the sewage system through November 1998, a month before the sale, the Health Department's documentation never reflected any concern about the diverter pipe.

In the face of this showing by defendants, the burden shifted to plaintiff to demonstrate that defendant Newton knew or should have known of the problems with the diverter pipe. Yet, plaintiff offered no evidence that the Health Department or anyone else ever informed defendant Newton that the diverter pipe required a permit or violated any regulation or law in any other way. Since plaintiff has offered no evidence that the representations were untrue when made, they do not give rise to a breach of contract claim and the trial court properly granted defendants' motion for summary judgment as to that claim. *See Crofton Ventures Ltd. P'ship v. G & H P'ship*, 116 F. Supp. 2d 633, 645 (D. Md. 2000) (granting summary judgment on breach of contract claim when defendant had warranted that, to the best of its knowledge, property had not been used for hazardous waste disposal and plaintiff failed to produce evidence that defendant knew or should have known of the hazardous waste on the site), *aff'd in pertinent part and vacated in part*, 258 F.3d 292, 300 (4th Cir. 2001); *Hoffer v. Callister*, 137 Idaho 291, 295, 47 P.3d 1261, 1265 (2002) (summary judgment as to breach of contract claim proper when seller of mobile home parks warranted, to the best of her knowledge, no violation of law or ordinance existed and there was "no dispute that [defendant] did not have any actual knowledge of the alleged zoning violations").

### Fraud Claim

[3] With respect to its fraud cause of action, RD&J alleged claims both for concealment and material misrepresentation. "The essential elements of actionable fraud are: '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794, 561 S.E.2d 905, 910 (2002) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). Additionally, plaintiff's reliance on any misrepresentations must be reasonable. *State Properties, LLC v. Ray*, 155 N.C. App. 65, 72, 574

S.E.2d 180, 186 (2002), *disc. review denied*, 356 N.C. 694, 577 S.E.2d 889 (2003).

In order for defendants to prevail on their motion for summary judgment, they did not need to negate every element of fraud. "If defendant effectively refutes even one element, summary judgment is proper." *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 191, 374 S.E.2d 135, 137 (1988). Here, RD&J forecast insufficient evidence of both defendants' scienter and of its own reasonable reliance.

The required scienter for fraud is not present without both knowledge and an intent to deceive, manipulate, or defraud. *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 568, 374 S.E.2d 385, 391 (1988).[2] This Court has repeatedly held that a "defendant could not, of course, be liable for concealing a fact of which it was unaware." *Ramsey*, 92 N.C. App. at 190, 374 S.E.2d at 137 (summary judgment proper where there was no issue of fact as to defendant auto dealer's lack of knowledge of vehicle's collision history). *See also Forbes v. Par Ten Group, Inc.*, 99 N.C. App. 587, 594, 394 S.E.2d 643, 647 (1990) ("Before defendants have any duty to disclose information, they must possess the information."), *disc. review denied*, 328 N.C. 89, 402 S.E.2d 824 (1991). Likewise, a defendant cannot be liable for misrepresenting a fact that it has no knowledge is false. *Taylor v. Gore*, 161 N.C. App. 300, 303, 588 S.E.2d 51, 54 (2003) (affirming grant of summary judgment), *disc. review denied*, 358 N.C. 380, 597 S.E.2d 775 (2004).

Once defendants presented affidavits evidencing a lack of knowledge that the diverter pipe needed a permit or was otherwise in violation of the law, the burden shifted to plaintiff to come forward with evidence placing defendants' knowledge in dispute. *Taylor*, 161 N.C. App. at 303, 588 S.E.2d at 54. Because RD&J has pointed to no evidence suggesting knowledge on the part of defendants, the trial court properly granted summary judgment as to the fraud claim. *Id.* (although defendants incorrectly represented that property was not in a flood zone, summary judgment on a fraud claim was correct when plaintiffs failed to refute defendants' showing that they did not know the property was in a flood zone); *Brown v. Roth*, 133 N.C. App. 52, 56, 514 S.E.2d 294, 297 (1999) (where there was no evidence in the record that defendant knew it had communicated false square

---

2. While a reckless disregard as to the truth of a statement may be sufficient to satisfy the element of "false representation," *Myers & Chapman* held that it is insufficient to meet the "intent to deceive" requirement. *Id.*

footage information to plaintiff, summary judgment proper on fraud claim); *Forbes*, 99 N.C. App. at 594-95, 394 S.E.2d at 647 (affirming summary judgment when plaintiffs' evidence did not refute defendants' showing of a lack of knowledge).

Even had RD&J demonstrated knowledge on the part of defendants, it has failed to forecast sufficient evidence that its own reliance was reasonable. With respect to the purchase of property, "[r]eliance is not reasonable if a plaintiff fails to make any independent investigation" unless the plaintiff can demonstrate: (1) "it was denied the opportunity to investigate the property," (2) it "could not discover the truth about the property's condition by exercise of reasonable diligence," or (3) "it was induced to forego additional investigation by the defendant's misrepresentations." *State Properties*, 155 N.C. App. at 73, 574 S.E.2d at 186. In an arm's-length transaction, when a purchaser of property has the opportunity to exercise reasonable diligence and fails to do so, the element of reasonable reliance is lacking and the purchaser has no action for fraud. *Calloway v. Wyatt*, 246 N.C. 129, 134, 97 S.E.2d 881, 885-86 (1957). While the reasonableness of a party's reliance is usually a question for the jury, a court may grant summary judgment when the facts are so clear that they support only one conclusion. *State Properties*, 155 N.C. App. at 73, 574 S.E.2d at 186.

In this case, the parties were dealing at arm's length and all of them were sophisticated businessmen, with two of RD&J's partners having experience in operating mobile home parks. These sophisticated businessmen chose to purchase the mobile home parks, specifically including the septic system, "as is." The phrase "as is" is defined as "[i]n the existing condition without modification[,]" *Black's Law Dictionary* 121 (8th ed. 2004), or "in its present condition[,]" *Webster's International Dictionary* 125 (3d ed. 1968). "Generally, a sale of property 'as is' means that the property is sold in its existing condition, and use of the phrase *as is* relieves the seller from liability for defects in that condition." *Black's, supra*, at 122 (emphasis original). *See also* N.C. Gen. Stat. § 25-2-316 (1986), comment 7 (in the context of the sale of goods, terms such as "as is" and the like "in ordinary commercial usage are understood to mean that the buyer takes the entire risk as to the quality of the goods involved"). To the extent that the sewage system was inadequate, RD&J assumed that risk by buying it "as is."

In the same paragraph as the "as is" clause, RD&J expressly represented that they had "inspected the two mobile home parks, . . .,

the Tangible Personal Property and Intangible Property to be sold"—a representation required presumably in an effort to avoid litigation such as the present lawsuit.[3] As this provision establishes and no evidence refutes, defendants did not in any way deny RD&J an opportunity to inspect the property nor did they engage in any artifice designed to induce RD&J to forego an investigation. Defendants in fact, through the Purchase Agreement, mandated the inspection. Nor has RD&J made any showing that an inspection of the septic system, such as occurred in 2000, would have failed to uncover the diverter pipe.

Under very similar circumstances, this Court has previously held that the trial court properly granted summary judgment as to a fraud claim because of a lack of evidence of reasonable reliance. In *Hearne v. Statesville Lodge No. 687*, 143 N.C. App. 560, 561-63, 546 S.E.2d 414, 415-16 (2001), plaintiffs had purchased property for the purpose of opening a restaurant. The defendant seller had informed them that the septic system on site was adequate for that purpose. Subsequently, plaintiffs learned that they could not obtain the necessary license for the restaurant because the septic system was insufficient. In affirming the grant of summary judgment, the Court pointed to the purchase contract, which specifically granted plaintiffs the right to inspect the septic system:

> The water and sewer systems shall be adequate and not in need of immediate repair. The purchaser shall have the option to have the above-listed systems, items and conditions inspected by a reputable inspector or contractor at purchasers['] expense prior to the time this Contract is executed. Execution of this Contract by the seller and purchasers signifies acceptance of premises in its current condition.

*Id.* at 563, 546 S.E.2d at 416. This provision—essentially specifying that signature on the contract resulted in a purchase of the premises "as is"—is materially indistinguishable from paragraph 14 of the Purchase Agreement in this case.

In *Hearne*, based on this provision, the fact that the negotiation of the sale was at arm's length, and the opportunity of plaintiffs to inspect the property and determine its suitability, the Court ruled that "there is no evidence that defendant . . . prevented plaintiffs from making such reasonable inspections of the property as was their

---

3. The Agreement expressly defined "Tangible Personal Property" as including "all sewer and underground water systems[.]"

responsibility" and held summary judgment was, therefore, proper. *Id. See also Goff v. Frank A. Ward Realty & Ins. Co.*, 21 N.C. App. 25, 29-30, 203 S.E.2d 65, 68 (no action for fraud based on septic tank problems where parties dealt at arms' length, plaintiffs had full opportunity to inspect lot and inquire of neighbors as to septic tank problems, and defendants resorted to no artifice calculated to induce plaintiffs to forego investigation), *cert. denied*, 285 N.C. 373, 205 S.E.2d 97 (1974). RD&J has offered no persuasive reason why we should reach a different conclusion with respect to its failure to inspect.

Because of RD&J's lack of evidence of scienter and reasonable reliance, we hold that the trial court properly granted defendants' motion for summary judgment as to RD&J's fraud claim.

### Unfair and Deceptive Trade Practices Claim

[4] The elements of a claim for unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (2003) are: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business. *Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998), *disc. review improvidently allowed*, 351 N.C. 41, 519 S.E.2d 314 (1999). To prevail on a Chapter 75 claim, a plaintiff need not show fraud, bad faith, or actual deception. Instead, it is sufficient if a plaintiff shows that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception. *Chastain v. Wall*, 78 N.C. App. 350, 356, 337 S.E.2d 150, 153 (1985), *disc. review denied*, 316 N.C. 375, 342 S.E.2d 891 (1986). Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive trade practice. *First Atl. Mgmt., Corp. v. Dunlea Realty, Co.*, 131 N.C. App. 242, 252-53, 507 S.E.2d 56, 63 (1998).

Even though we have determined that RD&J has presented insufficient evidence of fraud, we must still consider whether defendants' acts had the tendency or capacity to mislead. In a business context, this question is determined based on the likely effect on "the average businessperson." *Bolton Corp. v. T. A. Loving Co.*, 94 N.C. App. 392, 412, 380 S.E.2d 796, 808, *disc. review denied*, 325 N.C. 545, 385 S.E.2d 496 (1989).

Plaintiff does not explain the factual basis for its unfair and deceptive trade practices claim in its appellate brief and, in the

**RD&J PROPS. v. LAURALEA-DILTON ENTERS., LLC**

[165 N.C. App. 737 (2004)]

complaint, plaintiff merely incorporates by reference the factual allegations offered in support of its fraud claim. The essence of those allegations is that defendants represented that the property was in compliance with applicable regulations, but failed to disclose the existence of the diverter pipe, thereby deceiving plaintiff. Viewing the evidence in the light most favorable to plaintiff, defendants' acts did not have the capacity to deceive a reasonable businessperson.

The RD&J partners were sophisticated businessmen, electing to purchase property and a sewage system "as is" even though they had never had the property or system inspected. The phrase "as is" placed plaintiff, as a business, on notice that it needed to determine the "existing condition" of the parks, especially in light of defendants' qualification that the representations in paragraphs 17 and 19 of the Purchase Agreement were only "to the best of its knowledge." Even taken in the light most favorable to plaintiff, the circumstances of this case—including the "as is" and inspection provision in the Purchase Agreement, the lack of any evidence that an inspection would have failed to reveal the existence of the diverter pipe, and the fact that defendants disclosed the diverter pipe to the Health Department, whose records were available to RD&J—did not constitute an unfair or deceptive trade practice. *See Spartan Leasing Inc. of N.C. v. Pollard,* 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991) (summary judgment was proper on unfair and deceptive trade practices claim for the same reasons that the court had previously found any reliance on representations to be unreasonable).

For the foregoing reasons, we hold the trial court did not err in granting summary judgment to defendants on each of plaintiff's claims.

Affirmed.

Chief Judge MARTIN and Judge BRYANT concur.