An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-519

Filed 1 April 2026

Union County, No. 23CVS002334-890

ELIZABETH ANNA CELLO and RYAN THOMAS CELLO, Plaintiffs,

v.

CHRISTOPHER MICHAEL SECREST and SHELIA RAE SECREST, Defendants.

Appeal by plaintiffs from order entered 10 December 2024 by Judge Jonathan W. Perry in Union County Superior Court. Heard in the Court of Appeals 27 January 2026.

> *James deNobriga Long, PLLC, by Charles J. Bridgmon, for plaintiffs-appellants.*

> *Thurman, Wilson, Boutwell & Galvin, PA, by James P. Galvin, for defendants-appellees.*

ZACHARY, Judge.

Plaintiffs Elizabeth Anna and Ryan Thomas Cello appeal from an order granting Defendants Christopher Michael and Shelia Rae Secrest's motion for summary judgment on Plaintiffs' claims of fraud and negligent misrepresentation. After careful review, we affirm in part and reverse in part.

## I.  Background

In May 2022, Defendants listed their Union County home for sale, drawing Plaintiffs' interest; Plaintiffs visited the home and received a signed disclosure statement from Defendants on 1 August 2022.The disclosure statement addressed, in pertinent part, whether there was any "problem, malfunction or defect" regarding various aspects of the home and whether there were any leaks. Defendants checked "No" for each of these questions.

On 1 August 2022, the parties executed an "Offer to Purchase and Contract" and on 3 August 2022, Plaintiffs had the home inspected. The inspection revealed issues with, *inter alia*, the siding, windows, crawlspace, and HVAC system, and Plaintiffs were advised to further investigate certain areas that the inspectors were unable to properly evaluate, such as "whether . . . the property is on [a] well or septic [tank]." On 11 August 2022, Plaintiffs had the septic system reinspected; the report indicated issues with the placement of the septic tank and the condition of its control panel. Defendants agreed to credit Plaintiffs $5,000 at closing "in lieu of repairs in the septic system" and the parties signed an agreement to that effect.

On 26 October 2022, the parties closed on the house, after which Plaintiffs had "a structural inspection" performed and Defendants had "an inspection of all HVAC systems" conducted. Plaintiffs engaged in numerous repairs and upgrades to the home from November 2022 through 2023, such as replacing some of the windows; updating the electrical system; installing a new propane tank, a new septic tank, and

new HVAC units; and replacing the siding.

On 28 August 2023, Plaintiffs filed a complaint against Defendants, alleging fraud and negligent misrepresentation. In support of the fraud claim, Plaintiffs alleged that "Defendants made numerous misrepresentations of material fact in the [d]isclosure [s]tatement"—including misrepresentations about the septic system, HVAC equipment, structural defects, plumbing system, windows, and siding—in order to induce Plaintiffs to purchase the home. In support of the negligent misrepresentation claim, Plaintiffs alleged that Defendants "had a duty to accurately disclose information about the [h]ouse in the [d]isclosure [s]tatement" and that they "breached their duty by failing to disclose factually correct information about the [h]ouse."

In December 2023, Defendants filed their motion to dismiss, answer, and affirmative defenses. After engaging in discovery, on 28 June 2024, Defendants moved for summary judgment on both of Plaintiffs' claims. On 10 December 2024, the trial court entered an order granting Defendants' motion.

Plaintiffs gave timely notice of appeal.

## II.    Discussion

Plaintiffs raise two issues on appeal: whether the trial court erred (1) by considering the affidavit of Defendant Christopher Michael Secrest; and (2) by granting Defendants' motion for summary judgment.

### A. Standard of Review

We review "decisions arising from trial court orders granting or denying motions for summary judgment using a de novo standard of review." *Cummings v. Carroll*, 379 N.C. 347, 358, 866 S.E.2d 675, 684 (2021). "[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law," then the trial court shall grant a motion for summary judgment. N.C. Gen. Stat. § 1A-1, Rule 56(c) (2023).

"In evaluating the appropriateness of a trial court's decision to grant or deny a summary judgment motion in a particular case, we view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor." *Cummings*, 379 N.C. at 358, 866 S.E.2d at 684 (cleaned up). "To overcome a motion for summary judgment, the nonmoving party must then produce a forecast of evidence demonstrating that the nonmoving party will be able to make out at least a *prima facie* case at trial." *Creech v. Melnik*, 347 N.C. 520, 526, 495 S.E.2d 907, 911 (1998) (cleaned up).

## B. Timeliness of Affidavit

In support of their motion for summary judgment, Defendants submitted the affidavit of Defendant Christopher Michael Secrest. Plaintiffs argue that "the trial court erred when it considered the affidavit" because it was submitted one day before the hearing on the motion for summary judgment rather than two, in violation of N.C. Gen. Stat. § 1A-1, Rule 6(d). However, this issue was not preserved for appellate

4

review.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion. . . . It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion." N.C.R. App. P. 10(a)(1). Careful review of the transcript reveals that other than passing references to the alleged untimeliness of the affidavit, Plaintiffs did not present this argument to the trial court: no request or objection was made, nor did Plaintiffs obtain any ruling. Consequently, this issue was not preserved for our review and we will not address it.

**C. Negligent Misrepresentation**

It is well settled that "the tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742, 575 S.E.2d 40, 43–44 (2003) (cleaned up). Yet "a party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." *Cummings*, 379 N.C. at 366, 866 S.E.2d at 690 (cleaned up). "The extent to which a party justifiably relied upon items of information is generally a question of fact for the jury in the absence of a showing that the facts are so clear as to permit only one conclusion." *Id.* (cleaned up).

Regarding the purchase of property specifically, "reliance is not reasonable" in

the absence of a plaintiff's independent investigation "unless the plaintiff can demonstrate: (1) [he] was denied the opportunity to investigate the property, (2) [he] could not discover the truth about the property's condition by exercise of reasonable diligence, or (3) [he] was induced to [forgo] additional investigation by the defendant's misrepresentations." *MacFadden v. Louf*, 182 N.C. App. 745, 747–48, 643 S.E.2d 432, 434 (2007) (cleaned up).

In the present case, Plaintiffs argue that "[o]ne or more various questions of material fact precluded the granting of summary judgment": namely, that neither Plaintiffs nor their inspectors "could discover the presence of [a] 'straight pipe' by exercise of reasonable diligence" and that Plaintiffs "could not have discovered any damage beneath the kitchen sink due to the installation of a 'false floor' and quarter round." (Quotation marks added).

*1. Straight Pipe Sewage Disposal System*

The disclosure statement that Defendants completed contained the question: "What is the dwelling's sewage disposal system?" Of the options following this question, Defendants checked "Septic Tank" and "Septic Tank with Pump," while leaving unchecked "Straight pipe." A straight pipe sewage disposal system is defined on the disclosure statement as a disposal system in which "wastewater does not go into a septic or other sewer system."

Defendants acknowledge that a seller is required to disclose conditions "of which the owner has actual knowledge." N.C. Gen. Stat. § 47E-4(a)(1). They assert

6

that they "did not know they had a straight pipe" sewage disposal system; when the straight pipe sewage disposal system was installed, the plumber and the inspector at the time referred to it as a "redirect" for soapy water rather than a straight pipe. However, as noted above, the disclosure statement defines a straight pipe sewage disposal system, and Defendant Christopher Michael Secrest attested in his affidavit that the plumber who installed the straight pipe sewage disposal system "recommended that [Defendants] *pipe the 'soapy water' away from the septic*." (Emphasis added). This evidence raises the possibility that Defendants knew that they had a system that qualified as a straight pipe sewage disposal system as defined on the disclosure statement.

Nonetheless, Plaintiffs were not entitled to rely on Defendants' representations if they failed to make reasonable inquiry into the matter. As regards this issue, on 11 August 2022, Plaintiffs employed Lowery Plumbing and Septic to conduct a pre-closing inspection of the septic system. The resulting report neither mentioned the existence of a straight pipe sewage disposal system nor recommended further investigation, other than advising Defendants to contact the county "about making [the] septic tank accessible with [the] decking." Dustin Lowery, the inspector, attested in an affidavit dated 14 October 2024—which Plaintiffs later submitted to the trial court in opposing summary judgment—that his pre-closing inspection ended "when [he] was asked to leave the property by [Defendant Christopher Michael Secrest]. . . . This did not allow [him] access for inspection/operation of the drain field

area of the septic system." Moreover, Plaintiffs testified that the exterior portion of the straight pipe sewage disposal system "was covered by lawn debris" during the inspection and that it had been painted brown so as to blend in with the surrounding bricks. This evidence raises a question as to whether Plaintiffs were "denied the opportunity to investigate the property" or "could not discover the truth about the property's condition by exercise of reasonable diligence." *MacFadden*, 182 N.C. App. at 747–48, 643 S.E.2d at 434 (citation omitted).

Defendants argue that "the straight pipe in question was open and obvious and . . . Plaintiff[s] never asked about it," that Plaintiffs' "inspectors [were not] prevented from entering the crawlspace," and that an inspector "even took pictures of the straight pipe." However, the photographs, according to Plaintiff Elizabeth Anna Cello, were "not from the inspection," and Plaintiff Ryan Thomas Cello testified that his understanding of the job of a septic inspector did not include "mak[ing] sure all of the drain lines are flowing in" or "mak[ing] sure everything is up to code," but rather was limited to "making sure that the septic tank is holding the water and pumping it out and operating."

Our dissenting colleague also directs us to evidence indicating that Plaintiffs had notice of existing sewage system issues (including the existence of the straight pipe sewage disposal system), and that Plaintiffs' inspectors did, in fact, have access to the system's location and therefore, their inspections should have noted its presence. We agree with the dissent that there is evidence favoring Defendants'

position; however, at this stage of the proceedings, we must view "all . . . evidence in the record in the light most favorable to the nonmovant"—here, Plaintiffs—"and draw all reasonable inferences in that party's favor." *Cummings*, 379 N.C. at 358, 866 S.E.2d at 684 (citation omitted).

Because of the possible concealment of the straight pipe sewage disposal system, the unclear scope of the duties of the septic inspector, and the lack of demonstrated photographic evidence prior to closing, the question of Plaintiffs' actual or constructive knowledge of the existence of a straight pipe sewage disposal system remains at issue. Thus, there are genuine issues as to several material facts to be determined by the finder of fact: whether Defendants had actual knowledge of the presence of the straight pipe sewage disposal system, whether Defendants prevented Plaintiffs from properly inspecting the property, and whether Plaintiffs were on notice of the straight pipe sewage disposal system prior to closing. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c).

Accordingly, viewing "all . . . evidence in the record in the light most favorable to the nonmovant and draw[ing] all reasonable inferences in that party's favor," *Cummings*, 379 N.C. at 358, 866 S.E.2d at 684 (citation omitted), we conclude that the trial court erred in granting Defendants' motion for summary judgment on Plaintiffs' claim of negligent misrepresentation as to this issue.

2. *"False Floor"*

Plaintiffs also contend that there is evidence "that Defendants made an effort

to conceal damaged/rotten wood beneath the kitchen sink by installing a 'false floor' over the affected area." Plaintiffs "found a penny with a 2019 circulation date between the damaged area under the sink and the top, non-damaged layer," and discovered that the "quarter round had been nailed down, which would have made inspection beneath the top board impossible without destructive testing."

Defendants respond, in part, that summary judgment was proper because Plaintiffs "admitted there were no damages associated with the 'false floor' discovery." We agree.

A party is entitled to summary judgment "as a matter of law if the non-movant fails to forecast evidence with respect to an essential element of a claim." *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 589, 581 S.E.2d 68, 76, *disc. review denied*, 357 N.C. 507, 587 S.E.2d 672 (2003). An essential element of "[c]ertain torts" is that the "plaintiff incur actual damage." *Id.* (citation omitted). With regard to the tort of negligent misrepresentation, "[t]he damages recoverable . . . are those necessary to compensate the plaintiff for the pecuniary loss . . . , including . . . the difference between the value for what he has received in the transaction and its purchase price" or other pecuniary loss suffered. *Middleton v. Russell Grp.*, 126 N.C. App. 1, 29, 483 S.E.2d 727, 743 (citation omitted), *disc. review denied*, 346 N.C. 548, 488 S.E.2d 805 (1997).

Plaintiffs have failed to forecast evidence of actual pecuniary loss. Indeed, Plaintiff Ryan Thomas Cello testified that, as of the time of his deposition, they "[had

not] done anything yet" about the damage underneath the "false floor" and that there were no "repair costs associated with [the damaged floor] that [Plaintiffs were] claiming as part of th[e] lawsuit." Accordingly, the trial court properly granted summary judgment with respect to the "false floor" issue. *See Creech*, 347 N.C. at 526, 495 S.E.2d at 911.

## D. Fraud

"The essential elements of actionable fraud are: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *RD&J Props. v. Lauralea-Dilton Enters.*, 165 N.C. App. 737, 744, 600 S.E.2d 492, 498 (2004) (cleaned up). At the same time, "any reliance on the allegedly false representations must be reasonable." *Cummings*, 379 N.C. at 371, 866 S.E.2d at 693 (citation omitted). "The required scienter for fraud is not present without both knowledge and an intent to deceive, manipulate, or defraud." *RD&J*, 165 N.C. App. at 745, 600 S.E.2d at 498. "If a defendant presents evidence that it did not know of the fact in issue, the burden shifts to [the] plaintiff to prove that [the] defendant knew or had reason to know the fact." *Taylor v. Gore*, 161 N.C. App. 300, 303, 588 S.E.2d 51, 54 (2003) (cleaned up), *disc. review denied*, 358 N.C. 380, 597 S.E.2d 775 (2004).

### 1. *Straight Pipe Sewage Disposal System*

Plaintiffs point to Defendants' own changes to the septic system, "fail[ure] to disclose the presence of the straight pipe," awareness of a straight pipe's function,

and "efforts . . . to conceal the straight pipe" as potential evidence of Defendants' intent to deceive. In contrast, Defendants argue that Plaintiffs "could not have reasonably relied on any misstatements . . . as to the septic system," in that Plaintiffs "had notice from their August 11, 2022 septic inspection that there were many issues with the septic system, of which the straight pipe was a part." Nevertheless, while Defendants correctly assert that the septic system inspection revealed numerous issues, the report made no mention of the straight pipe sewage disposal system specifically or the existence of such a system, leaving Plaintiffs' knowledge of the system in question.

Additionally, Defendants note that they agreed to Plaintiffs' "requested $5,000 credit in closing cost in lieu of repairs on the septic system" (cleaned up) and contend that this constituted "an enforceable agreement in regard[ ] to settling the issues regarding the septic system." Defendants characterize Plaintiffs' "claims of fraud" as "an improper attack on a valid contract." Yet the closing credit agreement does not plainly state the problem for which the credit was intended to compensate Plaintiffs.

The dissent notes that Plaintiffs had "overwhelming notice of issues with the wastewater system," and that Defendants "openly negotiated a closing credit based on the outcome of" the septic inspections. *Dissent* at 5. All parties agree that Plaintiffs were aware of issues with the wastewater system. But the critical, open inquiry is whether they were on notice of the straight pipe sewage disposal system specifically, and whether the $5,000 closing credit contemplated repairs to fix that particular

system. Indeed, Defendants' own real estate agent, Juliana Labarbera, testified that the credit was given "in lieu of repairs for moving the septic tank"—that is, for a purpose other than the straight pipe sewage disposal system. Thus, the closing credit agreement does not eliminate any question of material fact as to fraud.

On the issue of knowledge, Defendants presented evidence supporting their claim that they "were not aware that they had a straight pipe" and contend that, having presented this evidence, the burden shifted to Plaintiffs to place Defendants' knowledge in dispute. *See id.* As outlined above, Plaintiffs satisfied the burden by pointing to the language of a "redirect" and the disclosure statement's definition of a straight pipe sewage disposal system.

Therefore, there are genuine questions of material fact regarding Plaintiffs' fraud claim on this issue: whether Defendants had the requisite knowledge and intent to deceive and whether Plaintiffs reasonably relied on Defendants' disclosure statement representation that indicated the lack of a straight pipe sewage disposal system.

### 2. *"False Floor"*

"Damage in a fraud case is the amount of loss caused by the difference between what was received and what was promised through a false representation." *Collier v. Bryant*, 216 N.C. App. 419, 431, 719 S.E.2d 70, 80 (2011) (cleaned up). Thus, Plaintiffs' allegation of fraud regarding the "false floor" fails for the same reason their allegation of negligent misrepresentation fails: Plaintiffs have forecast no evidence

13

that they suffered actual pecuniary loss as a result of fraud concerning the "false floor." Accordingly, summary judgment was appropriate as to this issue.

**E. Abandoned Issues**

In their complaint, Plaintiffs alleged that "Defendants made misrepresentations" and "fail[ed] to disclose factually correct information" concerning a variety of issues, including the "HVAC equipment," "[s]tructural defects," the "[p]lumbing [s]ystem," and "[w]indows and siding." However, Plaintiffs make no argument that the trial court erred by granting summary judgment in favor of Defendants as concerns those issues, limiting their arguments to the straight pipe sewage disposal system and the "false floor."

An appellant's brief must incorporate "[a]n argument, to contain the contentions of the appellant with respect to each issue presented. Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). Accordingly, these issues will not be addressed.

## III. Conclusion

For the foregoing reasons, we reverse the trial court's order granting summary judgment in favor of Defendants on Plaintiffs' claims of negligent misrepresentation and fraud as to the straight pipe sewage disposal system. We affirm the order as regards the remaining issues.

AFFIRMED IN PART AND REVERSED IN PART.

14

Judge ARROWOOD concurs.

Judge WOOD dissents in part by separate opinion.

Report per Rule 30(e).

No. COA25-519 – *Cello v. Secrest*

WOOD, Judge, dissenting in part.

While I concur with the majority's holding the trial court properly granted summary judgment on Plaintiff's claims regarding the "false floor," I respectfully dissent from the portion of the majority opinion holding the trial court erred in granting Defendant's motion for summary judgment on Plaintiff's claims of fraud and negligent misrepresentation regarding the straight pipe.

"Justifiable reliance is an essential element of both fraud and negligent misrepresentation." *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 277, 715 S.E.2d 541, 549-50 (2011) (quoting *Helms v. Holland*, 124 N.C. App. 629, 635, 478 S.E.2d 513, 517 (1996)). This Court has held that when a "Plaintiff fail[s] to establish that her reliance was justifiable because she conducted a home inspection before closing and that inspection report put her on notice of potential problems with the home," then summary judgment is appropriate because reliance is a necessary element of negligent misrepresentation and fraud. *MacFadden v. Louf*, 182 N.C. App. 745, 748, 643 S.E.2d 432, 434 (2007); *see also Folmar v. Kesiah*, 235 N.C. App. 20, 27, 760 S.E.2d 365, 370 (2014) ("the trial court did not err by granting summary judgment . . . on plaintiffs' claims of fraud and misrepresentation where the evidence fails to establish reasonable reliance by plaintiffs, as any reliance on the disclosure would

have been unreasonable in light of plaintiffs' independent home inspection report).

Here, Plaintiffs contend they justifiably relied on Defendants' disclosure statement because the boxes indicating the home had a septic system and the system had a pump had been checked, but the box to indicate it also had a straight pipe system was not. Whether Defendants were aware or not, certain portions of the pipe system to the septic system were capped off and diverted to a straight pipe that emptied soapy water into the woods. Defendants contend Plaintiffs cannot demonstrate reasonable reliance on their disclosure statement because "any reliance on the disclosure would have been unreasonable in light of plaintiffs' independent home inspection reports" prior to closing. *Folmar v. Kesiah*, 235 N.C. App. 20, 27, 760 S.E.2d 365, 370 (2014). The record evidence demonstrates, even when considered in the light most favorable to Plaintiffs as required at summary judgment, Plaintiffs could not reasonably rely on Defendants' disclosures. *Stevens v. Heller*, 268 N.C. App. 654, 658, 836 S.E.2d 675, 679 (2019).

On 3 August 2022, Plaintiffs engaged Frank Blas ("Blas") with Continental Home Inspections LLC to conduct a home inspection and subsequently received a 170-page inspection report with numerous pictures and video attachments. The report noted certain portions of the plumbing system needed repairs or replacements. Blas also indicated he was unable to determine whether the septic tank was located under the back deck of the home and recommended Plaintiffs conduct further inquiry into what type of wastewater system was present prior to purchasing the property.

At the hearing, Plaintiffs submitted as exhibit 32 an email communication with Blas in which Plaintiffs noted that one of the videos he had attached to his report was helpful in that it showed "as you walk around the crawl [space] you can see in the background that the drain lines were capped at the time of inspection." Clearly, the inspector had had open access to the crawl space from where the straight pipe originated and had taken video of the various pipes. Additionally, the inspector responded via email that "[w]e typically run as much water as we can in order to create a leak in the crawlspace or a backup in the system, or in some cases flooding in the leach field. I do believe some leakages were found in the crawlspace including under the kitchen area." This evidence indicates the inspection encompassed the pipes and drains, which should have included the straight pipe that directed soapy water outside and into the woods.

On 11 August 2022, Plaintiffs next engaged Dustin Lowery ("Lowery") of Lowery Plumbing and Septic, Inc. to conduct a more specific "On-site Wastewater Inspection." Lowery provided an inspection report of his findings along with a video "to explain issues." Lowery noted numerous, serious issues and code violations including: the outlet T was broken; the septic tank had been installed too close to the home; a deck had been built over the septic tank; the access risers were broken; the control panel was inoperable but had a cord plugged into a "piggyback"; there were no audible or visible alarms; the tank cover was broken; and there was a high level of solids in the tank. Lowery recommended Plaintiffs contact Union County Health

Department about the concerns.

After the wastewater inspection, Defendants submitted signed authorization allowing Plaintiffs to interface directly with the Union County Health Department as if they were the homeowners in order to facilitate further inquiries into the permit process for septic system improvement, construction, relocation, replacement, and expansion. Prior to closing on 26 October 2022, Plaintiffs completed an application for permit dated 7 September 2022, in which they attested to the fact that they had "cleared undergrowth on the property to the point that there is visibility for at least 50 feet from any one location." With 50 feet visibility, Plaintiffs should have seen all drainage pipes, including the straight pipe, exiting the crawl space.

The record evidence demonstrates Plaintiffs were on notice of the very serious issues with the wastewater system. In their purchase negotiations, Plaintiffs requested that "seller replace the septic system, properly abandon the current tank [and] make sure all electric to do with the pump is properly installed by a licensed [and] insured contractor, due to the current tank being inaccessible and covered by the deck which is illegal." Defendants declined to replace the system but offered Plaintiffs a credit at closing "in the amount of $5,000.00 in lieu of repairs on the septic system." By closing on the property under this agreement, Plaintiffs plainly and clearly accepted $5,000.00 as compensation for the serious and significant issues with the septic system.

The majority holds that "[b]ecause of the possible concealment of the straight

pipe sewage disposal system, the unclear scope of the duties of the septic inspector, and the lack of demonstrated photographic evidence prior to closing" there are genuine issues of material fact to be determined by the fact finder necessitating the issue be sent to the jury. However, the Plaintiff's attested to Union County that they had "cleared undergrowth on the property to the point that there is visibility for at least 50 feet from any one location" on the exterior of the house indicating no possible concealment of the straight pipe. The Plaintiff's own evidence included statements describing videos taken at the time of inspection saying, "as you walk around the crawl [space] you can see in the background that the drain lines were capped at the time of inspection." Thus, video evidence existed prior to closing. Finally, while Plaintiffs contend they did not understand exactly what the job of the inspector was, it seems elementary that the most fundamental duty of someone conducting an "On-site Wastewater Inspection" would be to identify any and all on-site wastewater systems.

Our Courts have held "[r]eliance is not reasonable if a plaintiff fails to make any independent investigation, or *fails to demonstrate he was prevented* from doing so[.]" *Cordaro v. Harrington Bank, FSB*, 260 N.C. App. 26, 35, 817 S.E.2d 247, 254 (2018) (emphasis added) (quoting *Arnesen v. Ricers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 449, 781 S.E.2d 1, 8 (2015)). Clearly, Plaintiffs did not fail to investigate. On the contrary, Plaintiffs' own evidence indicates they investigated by hiring two inspectors and Defendants not only did not prevent them from

investigating but facilitated their investigation and openly negotiated a closing credit based on the outcome of their investigation. Multiple independent inspections and their interactions with Union County Health Department provided Plaintiffs overwhelming notice of issues with the wastewater system, such that "any reliance on the disclosure would have been unreasonable." *Folmar v. Kesiah*, 235 N.C. App. 20, 27, 760 S.E.2d 365, 370 (2014).

Without justifiable reliance upon Defendants' disclosure, summary judgment for Defendants is appropriate. *MacFadden v. Louf*, 182 N.C. App. 745, 748, 643 S.E.2d 432, 434 (2007). Therefore, I would affirm the trial court's order in its entirety.