NO. COA13-1297

NORTH CAROLINA COURT OF APPEALS

Filed:  15 July 2014

JONATHAN RUSSEL FOLMAR and
MARGARET FOLMAR,
    Plaintiffs,

v.                          Union County
                             No. 12 CVS 2956

SAMUEL DAVID KESIAH and LOUIE
KESIAH, SARAH HARRIS and COOKE
REALTY, INC.,
    Defendants.


Appeal by plaintiffs from order entered 26 April 2013 by Judge W. David Lee in Union County Superior Court.  Heard in the Court of Appeals 9 April 2014.


    *DeVore Acton & Stafford, PA, by F. William DeVore, IV and Fred W. DeVore, III for plaintiff-appellants.*

    *Perry, Bundy, Plyler, Long & Cox, LLP, by H. Ligon Bundy and Natalie J. Broadway for defendant-appellees.*


    McCULLOUGH, Judge.


Plaintiff-homebuyers appeal from a summary judgment entered in favor of defendant-homeowners for their claims of fraud and misrepresentation, breach of contract, and punitive damages. Based on the reasons stated herein, we affirm the order of the trial court.

## I.   Background

On 15 October 2012, plaintiffs Jonathan Russel Folmar and Margaret Folmar filed a complaint against defendants Samuel David Kesiah and Louis Kesiah (collectively the "Kesiah defendants"), as well as against Sarah Harris and Cooke Realty, Inc. Sarah Harris ("Harris") and Cooke Realty, Inc. ("Cooke Realty") are not parties to this appeal.

The complaint alleged that on 30 March 2012, plaintiffs entered into a purchase agreement ("agreement") with the Kesiah defendants regarding real property located on Private Drive in Ocean Isle Beach, North Carolina ("the property"). Harris, a real estate agent, and Cooke Realty served as dual agents for both plaintiffs and the Kesiah defendants. Prior to closing, Harris went to the property with Darryl Moffett, a contractor hired by plaintiffs. Moffett was originally hired to paint and complete minor repair work for plaintiffs after closing but had arranged to meet Harris in order to determine the "scope of the work involved." While on the property, Moffett noticed a "deteriorated section of wall cladding on the front elevation next to the entry door." Moffett "pressed his hand against the wall, and a piece of wall cladding fell off, exposing rotted oriented strand board ("OSB") sheathing." Plaintiffs alleged that other defects were also discovered by Moffett in direct

view of Harris. Plaintiffs alleged that despite the fiduciary and contractual obligations of Harris to plaintiffs, Harris never informed plaintiffs of the defects found at the property.

Relying on the representations made by Harris, Cooke Realty and the Kesiah defendants, plaintiffs paid $349,000.00 for the property at closing. Immediately following closing, plaintiffs discovered:

> a substantial number of defects with the home, including but not limited to: interior water stains at windows and walls, delamated [sic] or missing cedar shingles, rotted wall cladding, one area on the front elevation wall exhibited previous repairs that included the installation of new beveled cedar lap siding and felt underlayment over wet and rotted wood sheathing, many areas of wood rot throughout the exterior of the building, etc.

Plaintiffs alleged that the Kesiah defendants had actual knowledge of the defects of the property, yet had checked "No" on the State of North Carolina Residential Property and Owners' Association Disclosure Statement ("the disclosure") in regards to the aforementioned areas. Plaintiffs also alleged that all defendants were aware of the defects found in the property prior to closing and were "responsible to disclose these defects to Plaintiffs prior to closing."

Plaintiffs claimed they had been damaged in excess of $10,000.00 and alleged the following claims: fraud and misrepresentation, breach of contract, and punitive damages against the Kesiah defendants; fraud and misrepresentation, breach of fiduciary duty, unfair and deceptive trade practices, and punitive damages against defendants Harris and Cooke Realty.

On 19 November 2012, the Kesiah defendants filed an answer. On 19 March 2013, the Kesiah defendants filed a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

Following a hearing held at the 22 April 2013 session of Union County Superior Court, the trial court entered summary judgment in favor of the Kesiah defendants and dismissed plaintiffs' action with prejudice as to the Kesiah defendants on 26 April 2013.

On 20 June 2013, defendants Harris and Cooke Realty filed an amended motion to change venue from Union County to Brunswick County. On 12 July 2013, the trial court entered an order transferring the file to the Brunswick County Clerk of Superior Court. On 1 August 2013, Union County filed an "Acknowledgement of Receipt of Transferred Case File."

On 22 August 2013, plaintiffs voluntarily dismissed their claims against Harris and Cooke Realty without prejudice.

Plaintiffs filed notice of appeal on 28 August 2014 in Union County Superior Court. Plaintiffs are appealing the entry of the 26 April 2013 order granting summary judgment in favor of the Kesiah defendants and dismissing plaintiffs' action with prejudice as to the Kesiah defendants.

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Hamby v. Profile Prods., LLC,* 197 N.C. App. 99, 105, 676 S.E.2d 594, 599 (2009) (citation omitted).

> The party moving for summary judgment has the burden of establishing the lack of any triable issue. The movant may meet this burden by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of

his claim or cannot surmount an affirmative defense which would bar the claim.

*Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citations omitted).

"The standard of review for a trial court's ruling on a motion for summary judgment is *de novo*. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Horne v. Town of Blowing Rock*, __ N.C. App. __, __, 732 S.E.2d 614, 618 (2012) (citations and quotation marks omitted).

## III. Discussion

On appeal, plaintiffs argue that the trial court erred by (A) granting summary judgment in favor of the Kesiah defendants where plaintiffs established a prima facie showing of fraud and misrepresentation by the Kesiah defendants and where plaintiffs exercised due diligence prior to purchasing the home and were not put on notice of the substantial defects prior to the sale of the property. Plaintiffs also argue that (B) the forecast of evidence demonstrated that summary judgment was not ripe for hearing.

As a preliminary matter, we address the Kesiah defendants' argument that our Court should dismiss plaintiffs' appeal as it is not properly before us. The Kesiah defendants contend that

because the trial court entered an order on 12 July 2013 transferring the present case from Union County to Brunswick County, plaintiffs should have thereafter filed notice of appeal in Brunswick County. The Kesiah defendants assert that plaintiffs' filing of notice of appeal on 28 April 2014 in Union County was not in compliance with the North Carolina Rules of Appellate Procedure and that their appeal should be dismissed for lack of jurisdiction.

We note that Rule 26(a) of the North Carolina Rules of Appellate Procedure, entitled "Filing and service" provides that "[p]apers required or permitted by these rules to be filed in the trial or appellate divisions shall be filed with the clerk of the *appropriate court.*" N.C. R. App. P. 26(a) (2013) (emphasis added). Article II of the North Carolina Rules of Appellate Procedure governs appeals from judgments and orders of superior courts and district courts. Rule 3 of Article II, entitled "Appeal in civil cases – How and when taken" provides as follows:

> (a) *Filing the notice of appeal.* Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal by filing notice of appeal with the clerk of superior court[.]

N.C. R. App. P. Rule 3(a) (2013).

In the case *sub judice*, plaintiffs' complaint was initiated in Union County Superior Court. The order granting summary judgment in favor of the Kesiah defendants was entered in Union County Superior Court and was final as to plaintiffs' claims against the Kesiah defendants. Thereafter, the remaining defendants, Harris and Cooke Realty, filed a motion to change venue to Brunswick County. The trial court granted this motion and transferred the file to Brunswick County on 12 July 2013 for "further proceedings as may be necessary or appropriate."

Because the summary judgment order entered in Union County was final as to plaintiffs' claims against the Kesiah defendants and because the proceedings that occurred in Brunswick County subsequent to the entry of summary judgment had no impact on the summary judgment order in favor of the Kesiah defendants, we hold that it was not error for the plaintiffs to file their notice of appeal in the "appropriate court" in Union County. Accordingly, we proceed to the merits of plaintiffs' appeal.

### A.   Fraud and Misrepresentation

First, plaintiffs argue that the trial court erred by granting summary judgment in favor of the Kesiah defendants where plaintiffs established a prima facie showing of fraud and

misrepresentation by the Kesiah defendants. In the event that our Court finds that a genuine issue of material fact exists as to plaintiffs' fraud and misrepresentation claim, plaintiffs also argue that there is a genuine issue of material fact as to their contract and punitive damages claims. Based on the following reasons, we reject plaintiffs' contentions.

> The essential elements of actionable fraud are (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party. Additionally, plaintiff's reliance on any misrepresentations must be reasonable.

*MacFadden v. Louf*, 182 N.C. App. 745, 747, 643 S.E.2d 432, 434 (2007) (citations omitted).

In the present case, plaintiffs assert that the Kesiah defendants falsely represented material facts: by marking "no" on the disclosure which stated "to your knowledge is there any problem (malfunction or defect)" with things such as the foundation, slab, floors, windows, doors, ceilings, interior and exterior walls, patio, deck, or other structural components; learning of the defects in the property sometime after 2006 and intentionally listing the property below value to "entice buyers as opposed to correcting the defects"; previously performing

work on the windows, sheathing, exterior walls, etc. prior to selling the home to plaintiffs and covering up existing rot with new materials; and having knowledge that many of the areas of the property were missing sheathing.

The Kesiah defendants argue that even assuming *arguendo* that they had knowledge of the defects of the property prior to selling the property to plaintiffs, any reliance by plaintiffs to the Kesiah defendants' alleged misrepresentations were not reasonable. We agree with the Kesiah defendants.

In *MacFadden v. Louf*, 182 N.C. App. 745, 643 S.E.2d 432 (2007), a homebuyer brought an action against the seller for alleged undisclosed defects in the subject property. *Id.* at 745, 643 S.E.2d at 433. The trial court granted summary judgment in favor of the seller and the homebuyer appealed to our Court, arguing that the trial court had erred by granting summary judgment on her claims for fraud and negligent representation. *Id.* at 746, 643 S.E.2d at 433. Our Court noted that

> [w]ith respect to the purchase of property, [r]eliance is not reasonable if a plaintiff fails to make any independent investigation unless the plaintiff can demonstrate: (1) it was denied the opportunity to investigate the property, (2) it could not discover the truth about the property's condition by exercise of reasonable diligence, or (3) it

> was induced to forego additional investigation by the defendant's misrepresentations.

*Id.* at 747-48, 643 S.E.2d at 434 (citations and quotation marks omitted).

Our Court held that the homebuyer failed to show "reasonable reliance" based on evidence that the homebuyer had conducted a home inspection prior to closing on the subject property. The inspection report "put her on notice of potential problems with the home" by instructing her to have a roofing contractor inspect the roof for the potential of water to pond above the kitchen/breeze-way area. *Id.* at 748, 643 S.E.2d at 434. The inspection report also noted, *inter alia*, water staining, previous water leakage, rusted and leaking gutters, and an uneven floor system which showed signs of previous moisture and pest infestation. *Id.* The homebuyer argued that "[d]espite the findings of the home inspection report, . . . she relied on the Residential Disclosure Statement completed by [the seller.]" *Id.* at 748, 643 S.E.2d at 435. However, our Court held that "any reliance on [the disclosure] would have been unreasonable in light of her own home inspection report which recommended that she have the roof evaluated by a roofing contractor and that she inquire or monitor the other problem

areas." *Id.* at 749, 643 S.E.2d at 435. Based on the foregoing reasons, the *MacFadden* Court affirmed the granting of summary judgment in favor of the seller on the claims of fraud and negligent misrepresentation. *Id.*

Upon thorough review, we find the facts in the case *sub judice* similar to the facts found in *MacFadden*. On 14 February 2012, the Kesiah defendants marked "no" on the disclosure which stated "to your knowledge is there any problem (malfunction or defect)" with things such as the foundation, slab, floors, windows, doors, ceilings, interior and exterior walls, patio, deck, or other structural components. However, plaintiffs subsequently conducted an independent home inspection on 23 February 2012, prior to closing on the property. The home inspection report noted several potential issues. In regards to the exterior of the property, the following was noted: as to the wall cladding: cedar shakes, "some of the siding is missing and there is some wood rot on the wall above front door"; "[u]pstairs door off the master has some wood rot and is very hard to open, also storm door has damaged the frame"; "[t]he window on the back left side looks to have water entering from the top of the window, staining is inside of window. Possible hidden damage may exist." In regards to the interior of the

property, the inspection report noted the following: "[w]all paper in front left bathroom is peeling due to shower head leaking"; "[w]ater stains present in the family room but were tested and found no active leak." Additionally, the home inspection report made a recommendation to plaintiffs that "[e]ach issue indicated in this summary should be evaluated by a qualified contractor or specialist for corrective measures to insure proper and safe use or service of the system in question." Notwithstanding the findings and recommendations made in the home inspection report, plaintiffs proceeded to the closing on 30 March 2012.

It is clear from the record that plaintiffs were not denied the opportunity to investigate the property and that plaintiffs were not induced to forego additional investigations by the Kesiah defendants' alleged misrepresentations. Had plaintiffs heeded the recommendation of the home inspection report that the aforementioned issues be evaluated by a specialist, it is likely that plaintiffs would have discovered the alleged defects to the house prior to closing. Accordingly, we hold that the trial court did not err by granting summary judgment in favor of the Kesiah defendants on plaintiffs' claims of fraud and misrepresentation where the evidence fails to establish

reasonable reliance by plaintiffs, as any reliance on the disclosure would have been unreasonable in light of plaintiffs' independent home inspection report.

Next, plaintiffs rely on *Everts v. Parkinson*, 147 N.C. App. 315, 555 S.E.2d 667 (2001), to argue that they exercised due diligence prior to purchasing the home and that the inspection report did not put plaintiffs on notice of the substantial defects of the property. Plaintiffs argue that the "majority of the numerous material defects [of the property] were not discovered until after the closing, and were concealed behind the exterior wall cladding." Because the inspection report only had a "brief description of some issues[,]" plaintiffs contend that they were not put on notice of the defects alleged in their complaint. Based upon a thorough review, we find the facts found in *Everts* to be distinguishable from the circumstances of the present case.

In *Everts*, the plaintiff-homebuyers filed a complaint against the original owners of a house – Mr. and Mrs. Parkinson, the builders, and the company that performed improvement work on the house, alleging claims of fraud, negligent misrepresentation, breach of contract, breach of express warranty, breach of implied warranty, and negligence. The

complaint alleged that the plaintiffs had to undertake extensive and costly repairs to the house as a result of water intrusion and wood rot problems. *Id.* at 318, 555 S.E.2d at 670. The trial court granted summary judgment in favor of the defendants on all claims against them and the plaintiffs appealed. *Id.* Our Court noted that after the Parkinsons moved into the house, they experienced numerous problems with window lights, rotting brick mold, and a rotting window. *Id.* at 321-22, 555 S.E.2d at 672. Subsequently, Mr. Parkinson replaced the window lights, performed brick mold repair work on a number of windows and doors, and completed extensive repair work to the particular window at issue. *Id.* at 324, 555 S.E.2d at 673-74. In regards to the requirement of an "intent to deceive," our Court found that Mr. Parkinson had engaged in such conduct by not informing the plaintiffs about any of the repair work and testifying that he did not disclose this information to the plaintiffs because "he did not feel that he had an obligation to do so[.]" *Id.* at 324, 555 S.E.2d at 674.

In regards to the requirement of showing reasonable reliance in cases of fraud, our Court noted that a duty to disclose material facts arises "[w]here material facts are accessible to the vendor only, *and he knows them not to be*

*within the reach of the diligent attention, observation and judgment of the purchaser."* *Id.* at 325, 555 S.E.2d 674 (citation omitted) (emphasis in original). Our Court found that there were genuine issues of material fact as to whether the alleged defects were discoverable in the exercise of the plaintiffs' "diligent attention or observation and, therefore, whether Mr. Parkinson had a duty to disclose the defects." *Id.* at 327, 555 S.E.2d at 675. The record contained an affidavit from a licensed residential home inspector who performed an inspection on the house at issue at the request of the plaintiffs prior to purchase. He testified to the following:

> at the time of the inspection, he "did not observe any rot or water infiltration," or "any problems with the exterior windows or doors on the house." He further testified that the "decorative bands," which had been installed around the windows before his inspection, "concealed the joint where the synthetic stucco met the window brick molding"
> and that, as a result, he "was not able to visually observe the perimeter joints of the exterior windows." He also stated that he "was not informed by the owner or the owner's realtor of any moisture intrusion problems involving the windows or window joint perimeter prior to [his] inspection," and that such information is "crucial information that [he] would have needed to know."

*Id.* Based on the foregoing, our Court held that, viewing the evidence in the light most favorable to the plaintiffs, Mr. Parkinson knew of the alleged defects, knew that the defects, "of which [the] plaintiffs were unaware, were not discoverable in the exercise of [the] plaintiffs' diligent attention or observation[,]" and, therefore, had a duty to disclose the existence of the defects to the plaintiffs, which he failed to do. *Id.* at 327-28, 555 S.E.2d at 675. As to Mr. Parkinson, our Court reversed the trial court's summary judgment on the claim of fraud. *Id.* at 328, 555 S.E.2d at 676.

In the present case, plaintiffs neither alleged in their complaint nor produced any evidence that the alleged defects were not discoverable in the exercise of due diligence. Rather, as we previously stated, plaintiffs' inspection report recommended that they have a qualified contractor or specialist evaluate the noted issues. Also dissimilar to the facts found in *Everts*, both of the Kesiah defendants testified through affidavits that they "did not know of any unrepaired deterioration of the house when we signed the disclosure statement or before the closing took place." Thus, we reject plaintiffs' contentions that they exercised due diligence and were not put on notice of the alleged defects of the property.

### B.    Ripe for Hearing

In their last argument, plaintiffs argue that the forecast of evidence demonstrated that summary judgment was not ripe for hearing and that summary judgment should have been denied or the hearing continued.    Plaintiffs assert that they intended to locate and depose Mr. Dennis Harold, the Kesiah defendants' contractor who allegedly made repairs on the property.

Rule 56(f) of the North Carolina Rules of Civil Procedure provides the following:

> When affidavits are unavailable. – Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

N.C. Gen. Stat. § 1A-1, Rule 56(f) (2013).    Rule 56(f) "gives the trial court the discretion to refuse the motion for judgment or order a continuance, *if the opposing party states by affidavit* the reasons why he is unable to present the necessary opposing material."    *Gillis v. Whitley's Discount Auto Sales, Inc.*, 70 N.C. App. 270, 274, 319 S.E.2d 661, 664 (1984) (emphasis added).

In the present case, while plaintiffs argue that their intent to depose Mr. Harold "could be inferred by a cursory reading" of the affidavit of their contractor, Darryl Moffett, we find this to be inadequate. Rule 56(f) requires an affidavit by the opposing party stating the reasons why they were unable to present the necessary opposing material and the record is clear that plaintiffs failed to do so. Thus, we reject plaintiffs' arguments that summary judgment was not ripe for hearing.

## IV. Conclusion

Where we hold that the trial court did not err by granting summary judgment in favor of the Kesiah defendants on the claims of fraud and misrepresentation and where we reject plaintiffs' argument that summary judgment was not ripe for hearing, we affirm the 26 April 2013 order of the trial court.

Affirmed.

Judges ELMORE and DAVIS concur.