IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-344

 Filed: 3 December 2019

Wake County, No. 17-CVS-015449

THOMAS A. STEVENS, ELLEN M. STEVENS, and MARYLYNN STEVENS,
Plaintiffs,

 v.

SHANDA HELLER, JOHN BOSTON HELLER, and BFD PROPERTIES INC. d/b/a
RE/MAX UNITED, Defendants.

 Appeal by Plaintiffs from order entered 11 October 2018 by Judge A. Graham

Shirley in Wake County Superior Court. Heard in the Court of Appeals 3 October

2019.

 Thomas A. Stevens, pro se.

 Manning Fulton & Skinner P.A., by William C. Smith, Jr., for the Defendants.

 BROOK, Judge.

 Thomas A. Stevens, Ellen M. Stevens, and MaryLynn Stevens (“Plaintiffs”)

appeal the trial court’s order granting summary judgment in favor of Shanda Heller,

John Boston Heller, and BFD Properties, Inc. d/b/a RE/MAX United (“Defendants”)

and denying their partial cross-motion for summary judgment. We affirm.

 I. Background

 Thomas Stevens is a lawyer who lives in Delaware with his wife, Ellen Stevens.

Shanda Heller and John Boston Heller are married and live in North Carolina. The
 STEVENS V. HELLER

 Opinion of the Court

Hellers own BFD Properties, Inc. (“BFD Properties”), a real estate agency located in

Cary, North Carolina that does business as RE/MAX United. Ms. Heller is a real

estate broker and an independent contractor and agent of BFD Properties.

 On 29 June 2017 a real estate broker engaged by Mr. Stevens presented an

offer to Ms. Heller to purchase real property located at 1431 Collegiate Circle in

Raleigh, North Carolina. Ms. Heller counter-offered the following day. In her

counter-offer Ms. Heller explained that she and her husband owned the property as

an investment but had decided to sell it because their son was leaving home for

college, presenting the Hellers with the opportunity to obtain housing for their son

for his college years through a tax-deferred exchange. Attaching residential property

disclosures to her counter-offer, Ms. Heller noted:

 I have checked a few items as “No Representation” because
 we’ve never lived in the property and I am not 100% sure
 (i.e. type of plumbing, age of roof) of ages or types of
 systems. To our knowledge everything is in good working
 order. I can try to verify when roof was replaced and
 plumbing with management company . . . .

 Mr. Stevens and his broker both electronically confirmed receipt of the

disclosures and Mr. Stevens and Ms. Heller then executed a purchase agreement for

the property that same day, on 30 June 2017. The purchase agreement set 14 July

2017 as the settlement date for the transaction. It stipulated that Mr. Stevens’s due

diligence period began on 30 June 2017, the date of the purchase agreement, and

concluded at 5:00 p.m. on 13 July 2017, the day before the date set for settlement.

 -2-
 STEVENS V. HELLER

 Opinion of the Court

 On 14 July 2017, the date set for settlement and the day after the expiration

of the due diligence period, a contractor performed maintenance on the HVAC system

in the property, damaging the system in the process. The contractor informed the

Hellers of the damage and that the damage had been repaired and Ms. Heller

conveyed this information to Mr. Stevens, providing Mr. Stevens with copies of

invoices for the work. The transaction then closed three days later on 17 July 2017.

Ultimately, no inspection of the property was conducted by Mr. Stevens or anyone

acting on his behalf prior to the closing of the transaction.1

 Plaintiffs thereafter initiated the present action in Wake County Superior

Court. In their first amended complaint, Plaintiffs asserted claims for breach of

contract, fraud, fraud in the inducement, negligent misrepresentation, and unfair

and deceptive practices, alleging essentially that the HVAC system in the property

needed to be completely replaced and that Defendants knew or should have known

about this defect but failed to disclose it to Mr. Stevens prior to the closing of the

transaction. Throughout their complaint, Plaintiffs advanced the theory that the

duty of Ms. Heller to disclose information about latent defects of which she was or

 1 In reply to a congratulatory e-mail from his broker sent over the weekend following the
execution of the purchase agreement, Mr. Stevens related that because of the “tight closing schedule,”
he was disinclined to conduct an inspection of the property prior to closing, unless his broker advised
otherwise. His broker inquired in response: “Are you 100% sure you don’t want an inspection? Just
want to make sure[.]” Mr. Stevens replied by stating that it was “up to ML,” meaning MaryLynn
Stevens, his daughter. However, no inspection was conducted by either Mr. Stevens or his daughter
or anyone acting on their behalf before the transaction closed.

 -3-
 STEVENS V. HELLER

 Opinion of the Court

should have been aware was heightened because she was both an owner of the

property and a licensed real estate broker.

 On 23 July 2018 Defendants filed a motion for summary judgment pursuant to

Rule 56 of the North Carolina Rules of Civil Procedure. On 13 September 2018

Plaintiffs filed a partial cross-motion for summary judgment on liability only. The

motions came on for hearing on 24 September 2018 before the Honorable A. Graham

Shirley, II. In an order entered on 11 October 2018, Judge Shirley granted

Defendants’ motion and denied Plaintiffs’ motion. Plaintiffs entered timely written

notice of appeal on 8 November 2018.

 II. Analysis

 Mr. Stevens makes several arguments on appeal, which we address after

resolving a pending motion to dismiss the appeal.

 A. Motion to Dismiss

 While Plaintiffs’ notice of appeal was timely, Mr. Stevens’s appellate brief was

not timely filed.

 On 10 May 2019, Mr. Stevens filed a motion requesting an extension of the

time to file an appellate brief. This Court allowed the motion in a 14 May 2019 order,

setting a new deadline of 20 May 2019 for filing and service of Mr. Stevens’s appellate

brief.

 -4-
 STEVENS V. HELLER

 Opinion of the Court

 By 20 May 2019, however, Mr. Stevens did not file and serve his appellate

brief, as ordered on 14 May 2019, nor did he request a second extension prior to the

new deadline set on 14 May 2019 expiring.

 On 22 May 2019, two days after the deadline set on 14 May 2019 had expired,

Mr. Stevens filed a second motion requesting an extension of time to file an appellate

brief. This Court allowed the motion in a 23 May 2019 order, setting a new deadline

of 24 May 2019 for filing and service of Mr. Stevens’s appellate brief.

 That same day, Defendants filed a motion requesting that the Court reconsider

or vacate its 23 May 2019 order allowing Mr. Stevens an additional extension to file

and serve his appellate brief because of his failure to file or request an extension of

the time to file his appellate brief by 20 May 2019. This Court denied the motion on

24 May 2019.

 Mr. Stevens finally filed and served his appellate brief on 24 May 2019.

 Defendants therefore move that this appeal be dismissed for non-compliance

with Rule 13(a) of the North Carolina Rules of Appellate Procedure based on Mr.

Stevens’s failure to file and serve his appellate brief or request an extension of the

time to file and serve his appellate brief by 20 May 2019. See N.C. R. App. P. 13(a)

(“Within thirty days after the record on appeal has been filed . . . , the appellant shall

file a brief . . . and serve copies thereof upon all other parties”).

 -5-
 STEVENS V. HELLER

 Opinion of the Court

 Mr. Stevens’s two-day period of non-compliance with Rule 13(a) constitutes a

non-jurisdictional violation of the appellate rules. See Dogwood Dev. and Mgmt. v.

White Oak Transp., 362 N.C. 191, 197-98, 657 S.E.2d 361, 364-65 (2008) (observing

that jurisdictional rule violations consist of failures to comply with the rules

“necessary to vest jurisdiction in the appellate court,” such as Rule 3 and Rule 4(a)(2)).

“[A] party’s failure to comply with nonjurisdictional rule requirements normally

should not lead to dismissal of the appeal.” Id. at 198, 657 S.E.2d at 365. We hold

that Mr. Stevens’s non-compliance with Rule 13(a) does not rise to the level of a

“substantial failure or gross violation” justifying the “extreme sanction” of dismissal

because in the present case the non-compliance has not impaired our “task of

review[,] and . . . review on the merits would [not] frustrate the adversarial process.”

Id. at 200, 657 S.E.2d at 366-67. Defendants’ motion to dismiss the appeal is

therefore denied.

 B. Motions for Summary Judgment

 Mr. Stevens argues that the trial court erred by granting summary judgment

in favor of Defendants and denying Plaintiffs’ partial cross-motion for summary

judgment on liability only because there were genuine issues of material fact

regarding Defendants’ alleged misrepresentations and Ms. Heller owed him a

heightened duty of disclosure as both an owner of the real property and a licensed

real estate broker. We disagree.

 -6-
 STEVENS V. HELLER

 Opinion of the Court

 1. Introduction and Standard of Review

 Under Rule 56 of the North Carolina Rules of Civil Procedure, summary

judgment is proper “if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that any party is entitled to a judgment as a matter

of law.” N.C. Gen. Stat. § 1A-1, Rule 56 (2017). “[A]n issue is genuine if it is

supported by substantial evidence[.]” DeWitt v. Eveready Battery Co., 355 N.C. 672,

681, 565 S.E.2d 140, 146 (2002) (internal marks and citation omitted). “[A]n issue is

material if the facts alleged would constitute a legal defense, or would affect the result

of the action, or if its resolution would prevent the party against whom it is resolved

from prevailing in the action[.]” Id. (internal marks and citation omitted).

“Substantial evidence is . . . evidence [] a reasonable mind might accept as adequate

to support a conclusion[.]” Id. (internal marks and citation omitted).

 However, when ruling on a motion for summary judgment or reviewing such a

ruling on appeal, “[a]ll facts asserted by the adverse party are taken as true . . . and

their inferences must be viewed in the light most favorable to that party[.]” Dobson

v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (internal marks and citation

omitted). “The Court must look at the evidence in the light most favorable to the non-

moving party and with the benefit of all reasonable inferences.” Jenkins v. Lake

Montonia Club, 125 N.C. App. 102, 104, 479 S.E.2d 259, 261 (1997) (citation omitted).

 -7-
 STEVENS V. HELLER

 Opinion of the Court

“The party moving for summary judgment bears the burden of establishing the lack

of a triable issue of fact.” Purcell v. Downey, 162 N.C. App. 529, 531-32, 591 S.E.2d

556, 558 (2004).

 The standard of review in an appeal from an order granting a motion for

summary judgment and denying a partial cross-motion for summary judgment is

de novo. Forbis v. Neal, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007). “Under a

de novo standard of review, this Court considers the matter anew and freely

substitutes its own judgment for that of the trial court.” Horne v. Town of Blowing

Rock, 223 N.C. App. 26, 32, 732 S.E.2d 614, 618 (2012) (citation omitted).

 2. Buyer’s and Seller’s Duties

 In North Carolina, the Residential Property Disclosure Act (“the Act”) applies

to sales of “residential real property consisting of not less than one nor more than

four dwelling units, whether or not the transaction is with the assistance of a licensed

real estate broker or salesman[.]” N.C. Gen. Stat. § 47E-4(a)(1) (2017). The Act in

relevant part requires that “the owner of real property [] furnish to a purchaser a

residential property disclosure statement,” including information about the

“characteristics and conditions of the . . . plumbing, electrical, heating, cooling, and

other mechanical systems[.]” Id. § 47E-4(b)(3). However, unless an owner of real

property chooses to make no representation with respect to a “characteristic or

condition” about which N.C. Gen. Stat. § 47E-4(b) requires disclosure, the Act does

 -8-
 STEVENS V. HELLER

 Opinion of the Court

not affect “[t]he rights of the parties to a real estate contract as to conditions of the

property of which the owner ha[s] no actual knowledge[.]” Id. § 47E-6. The Act

additionally provides as follows:

 the owner may discharge the duty to disclose . . . by
 providing a written report attached to the residential
 property disclosure statement by a public agency or by an
 attorney, engineer, land surveyor, geologist, pest control
 operator, contractor, home inspector or other expert,
 dealing with matters within the scope of the public
 agency’s functions or the expert’s license or expertise. The
 owner shall not be liable for any error, inaccuracy, or
 omission of any information delivered pursuant to this
 section if the error, inaccuracy, or omission was made in
 reasonable reliance upon the information provided by the
 public agency or expert and the owner was not grossly
 negligent in obtaining the information or transmitting it.

Id. § 47E-7.

 However, while a seller of real property is entitled to reasonable reliance on

the opinions and information provided by professionals when discharging the duties

of disclosure imposed by N.C. Gen. Stat. § 47E-4(b), see id., “a purchaser [] [who] has

the opportunity to exercise reasonable diligence and fails to do so . . . has no action

for fraud,” MacFadden v. Louf, 182 N.C. App. 745, 748, 643 S.E.2d 432, 434 (2007)

(citation omitted). This Court has held:

 [w]ith respect to the purchase of property, reliance is not
 reasonable if a plaintiff fails to make any independent
 investigation unless the plaintiff can demonstrate: (1) it
 was denied the opportunity to investigate the property, (2)
 it could not discover the truth about the property’s
 condition by exercise of reasonable diligence, or (3) it was

 -9-
 STEVENS V. HELLER

 Opinion of the Court

 induced to forego additional investigation by the
 defendant’s misrepresentations.

RD&J Props. v. Lauralea-Dilton Enters., 165 N.C. App. 737, 746, 600 S.E.2d 492, 499

(2004) (internal marks and citation omitted). A buyer of real property is therefore

not entitled to rely solely on the property disclosure statement prepared by the seller

and conduct no independent due diligence and then subsequently maintain an action

against the seller for failure to disclose a latent defect unless the buyer can show that

the seller’s misrepresentations caused the lack of reasonable diligence. See Folmar

v. Kesiah, 235 N.C. App. 20, 26-27, 760 S.E.2d 365, 369-70 (2014) (affirming summary

judgment on claim by buyer based on content of disclosure statement where buyer’s

inspection report notified buyer of defects before closing but buyer chose to

consummate sale anyway); MacFadden, 182 N.C. App. at 748-49, 643 S.E.2d at 434-

35 (same); Swain v. Preston Falls East, 156 N.C. App. 357, 361-62, 576 S.E.2d 699,

702-03 (2003) (affirming summary judgment on claim by buyer notified in addendum

to purchase contract about potential exterior coating defect, noting language from

disclosure statement encouraging buyer to obtain independent inspection prior to

closing).

 3. Mr. Stevens’s Failure to Conduct Reasonable Diligence

 In the present case, the purchase agreement entered into by Mr. Stevens and

the Hellers provided in relevant part as follows:

 4. BUYER’S DUE DILIGENCE PROCESS:

 - 10 -
 STEVENS V. HELLER

 Opinion of the Court

 ...

 During the Due Diligence Period, Buyer or Buyer’s agents
 or representatives, at Buyer’s expense, shall be entitled to
 conduct all desired tests, surveys, appraisals,
 investigations, examinations and inspections of the
 Property as Buyer deems appropriate, including but NOT
 limited to the following:

 (i) Inspections: Inspections to determine the condition of
 any improvements on the Property, the presence of
 unusual drainage conditions or evidence of excessive
 moisture adversely affecting any improvements on the
 Property, the presence of asbestos or existing
 environmental contamination, evidence of wood-destroying
 insects or damage therefrom, and the presence and level of
 radon gas on the Property.

 ...

 Buyer acknowledges and understands that unless the
 parties agree otherwise, THE PROPERTY IS BEING
 SOLD IN ITS CURRENT CONDITION. Buyer and Seller
 acknowledge and understand that they may, but are not
 required to, engage in negotiations for
 repairs/improvements to the Property. Buyer is advised to
 make any repair/improvement requests in sufficient time
 to allow repair/improvement negotiations to be concluded
 prior to the expiration of the Due Diligence Period.

(Emphasis in original.) The purchase agreement also required the Hellers to provide

Mr. Stevens with “reasonable access to the Property (including working, existing

utilities) the earlier of Closing or possession by Buyer, including, but not limited to,

allowing Buyer an opportunity to conduct a final walk-through inspection of the

Property.”

 - 11 -
 STEVENS V. HELLER

 Opinion of the Court

 As required by N.C. Gen. Stat. § 47E-4(b), the residential property disclosure

statement prepared by Ms. Heller stated as follows:

 2. You must respond to each of the questions on the
 following pages of this form by filling in the requested
 information or by placing a check [] in the appropriate box.
 In responding to the questions, you are only obligated to
 disclose information about which you have actual
 knowledge.

 a. If you check “Yes” for any question, you must explain
 your answer and either describe any problem or attach a
 report from an attorney, engineer, contractor, pest control
 operator or other expert or public agency describing it. If
 you attach a report, you will not be liable for any inaccurate
 or incomplete information contained in it so long as you
 were not grossly negligent in obtaining or transmitting the
 information.

 b. If you check “No,” you are stating that you have no actual
 knowledge of any problem. If you check “No” and you know
 there is a problem, you may be liable for making an
 intentional misstatement.

 c. If you check “No Representation,” you are choosing not
 to disclose the conditions or characteristics of the property,
 even if you have actual knowledge of them or should have
 known of them.

 d. If you check “Yes” or “No” and something happens to the
 property to make your Disclosure Statement incorrect or
 inaccurate (for example, the roof begins to leak), you must
 promptly give the purchaser a corrected Disclosure
 Statement or correct the problem.

The first page of the disclosure statement additionally noted that it was “not a

substitute for any inspections [the purchasers] may wish to obtain,” stating further

 - 12 -
 STEVENS V. HELLER

 Opinion of the Court

that “[p]urchasers are strongly encouraged to obtain their own inspections from a

licensed home inspector[.]”

 The second page of the disclosure statement went on to specify that the

representations it contained only concerned characteristics or conditions of the

property about which the owners had “actual knowledge,” consistent with N.C. Gen.

Stat. § 47E-6. Question nine on the following page of the disclosure statement asked:

 9. Is there any problem, malfunction or defect with the
 dwelling’s heating and/or air conditioning?

Ms. Heller checked the box indicating that the answer to this question was “No,”

representing that she had no actual knowledge of any defects with the HVAC system

as of 30 June 2017, the date Ms. Heller executed the disclosure and Mr. Stevens

acknowledged it.

 Ms. Heller supplemented her response to question nine of the disclosure

statement by providing Mr. Stevens with “written report[s]” within the meaning of

N.C. Gen. Stat. § 47E-7 on 14 July 2017 in the form of invoices from the HVAC

contractor that performed the maintenance and repair work on the system. By this

point, Mr. Stevens had chosen not to conduct an inspection during the due diligence

period, and Mr. Stevens did not investigate the issues with the HVAC system prior

to the closing of the transaction on 17 July 2017. There is no record evidence

supporting an inference that the Hellers’ disclosures on 30 July 2017 in the

residential disclosure statement were knowing misrepresentations or that the

 - 13 -
 STEVENS V. HELLER

 Opinion of the Court

Hellers were grossly negligent in their choice of HVAC contractor. Viewing the

evidence in the light most favorable to Plaintiffs and giving Plaintiffs the benefit of

every reasonable inference, as we are required to do, we hold that the failure of Mr.

Stevens to conduct any inspection of the property during the due diligence period or

prior to closing, after being notified of potential problems with the HVAC system,

constituted a failure by Mr. Stevens to conduct reasonable diligence under the

circumstances. Accordingly, with respect to Defendants’ motion, we affirm the trial

court’s decision to grant summary judgment in favor of Defendants; likewise, we

therefore affirm the trial court’s decision to deny Plaintiffs’ partial cross-motion on

liability only, as our determination that Defendants were entitled to judgment as a

matter of law entails.

 4. Duty of Sellers Who Are Licensed Real Estate Brokers

 As noted previously, throughout the amended complaint and the appellate

brief filed by Mr. Stevens, Mr. Stevens repeatedly asserts that Ms. Heller owed him

a heightened duty of disclosure compared to an ordinary seller of real property

because she was a licensed real estate broker and an owner of the property, not an

ordinary seller. Mr. Stevens repeats this assertion often but offers no authority to

support it.2 We are not aware of any either. We therefore decline to endorse the

 2 The best Mr. Stevens does to support this proposition is to cite provisions of Chapter 93A of
the General Statutes, which sets out the regulatory requirements applicable to licensed real estate
brokers, such as the prohibition in N.C. Gen. Stat. § 93A-6(a)(1) against “willful or negligent

 - 14 -
 STEVENS V. HELLER

 Opinion of the Court

viewpoint advocated by Mr. Stevens that licensed real estate brokers owe buyers they

do not represent as agents any heightened duty of disclosure when they also own the

property they are selling; that is, we expressly reject the argument that owners of

real property who sell that property while also acting in the capacity of a licensed real

estate broker with respect to such sales are transformed into buyer’s agents or dual

agents by operation of law. Accordingly, we reiterate our holding that the trial court

correctly concluded that Plaintiffs were not entitled to judgment as a matter of law

on liability only.

 III. Conclusion

 The trial court correctly concluded that Defendants were entitled to judgment

as a matter of law where there is no genuine issue of material fact that Mr. Stevens

failed to exercise reasonable diligence prior to consummating the purchase from the

Hellers. Additionally, despite being a licensed real estate broker, Ms. Heller owed

Mr. Stevens no duty to him greater than that owed by an ordinary seller to an

ordinary buyer of real property. We therefore affirm the order of the trial court.

 AFFIRMED.

misrepresentation or any willful or negligent omission of material fact.” N.C. Gen. Stat. § 93A-6(a)(1)
(2017). This provision sets out an instance of conduct that is subject to discipline by the North Carolina
Real Estate Commission, the body tasked with enforcing the regulatory requirements applicable to
real estate brokers in North Carolina; it does not support the proposition that real estate brokers who
own property they are also engaged in selling in their capacity as brokers owe a heightened duty to
the buyers of such property. Licensed real estate brokers who are selling property they own do not
become the buyers’ fiduciaries simply by virtue of being both brokers and self-represented sellers in
the transaction.

 - 15 -
 STEVENS V. HELLER

 Opinion of the Court

Judges DIETZ and INMAN concur.

 - 16 -