Brown v. Secor, 2020 NCBC 82.

STATE OF NORTH CAROLINA
CLEVELAND COUNTY
IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 608

DOUGLAS BROWN,

    Plaintiff and Counterclaim
Defendant,

v.

ARTHUR D. SECOR; SECOR GROUP,
LLC; JOSEPH CHRISTOPHER ROSSO;
and SOUTHGROUP REAL ESTATE
MARKETING, LLC,

    Defendants and
Counterclaim Plaintiffs.

**ORDER AND OPINION ON
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION TO
AMEND OR RECONSIDER**

1.    Art Secor and Joe Rosso are real estate developers.  They acquire distressed properties with funds from investors and then try to sell at a higher price.  Doug Brown is one of these investors.  Beginning in May 2013, Brown invested $2.2 million related to three real estate deals, but he has not received a return of his principal or a share of any profits in the years since.  Seeking to recover his investment, Brown sued Secor and Rosso as well as two entities they use to buy and hold properties, Secor Group, LLC and Southgroup Real Estate Marketing, LLC ("Southgroup").

2.    This Order addresses two motions.  First, the four Defendants have moved for summary judgment on most of Brown's claims, which sound in contract and fraud. Second, Brown asks the Court either to revisit an earlier ruling related to the scope of his claim for breach of contract or to allow him to amend the complaint.  For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion for summary judgment and **GRANTS** Brown's motion to amend.

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by Michael L. Carpenter and Marshall P. Walker, for Plaintiff Douglas Brown.*

*Parker Poe Adams and Bernstein LLP, by Morgan H. Rogers and Eric A. Frick, for Defendants Arthur D. Secor, Secor Group, LLC, Joseph Christopher Rosso, and Southgroup Real Estate Marketing, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

3.    Courts do not make findings of fact when deciding motions for summary judgment. This background describes the evidence, noting relevant disputes, to provide context for the Court's analysis and ruling.

4.    Secor and Rosso are longtime business associates. Together, they acquire distressed real estate and develop it with the goal of selling for a profit. (*See* Pl.'s Exs. 17, 18, ECF Nos. 154.18, 154.19.) Secor and Rosso do much of their work under the name LW Land, which appears to be a brand for several companies, including Secor Group and Southgroup. (*See* Pl.'s Ex. 18; Secor Dep. 153:9–21, ECF Nos. 154.27, 154.28.)

5.    Brown first met Secor in early 2013. According to Brown, Secor "talked about the land deals he had," which involved buying properties for "10 to 15 cents on a dollar" and then aiming to "flip them in three to six months" for "double our money." (Brown Dep. 91:16–20, ECF No. 139.3.) Brown said he'd "think about it." (Brown Dep. 91:3–4.)

6.    When the pair met again in May 2013, Brown agreed to invest. Beyond that, there is little consensus about what happened at that meeting. It is unclear, for example, whether Rosso attended. (*See* Brown Dep. 285:6–11; Rosso Dep. 125:21–24,

ECF No. 154.26.)  And neither side memorialized their agreement, fueling disputes about its terms and sowing confusion about who the parties are.  Brown's version of the oral agreement is that he would provide funding in return for an equal split of any profits after a full return of his principal plus six percent interest.  (*See* Brown Dep. 9:19–10:9, 143:2–16.)   This agreement, he testified, was not with Secor personally but with Southgroup.   (*See* Brown Dep. 285:24–286:5, 290:25–291:6.)  Secor disputes the terms of the agreement (although his version is not relevant for present purposes) and has testified that both Southgroup and Secor Group are parties to it.  (*See* Secor Dep. 142:8–16, 151:16–22.)

7.      Within days of this meeting, Secor presented an appraisal for an investment property called Black Bear Falls.  (*See* Brown Dep. 110:5–111:2; Defs.' Ex. 4, ECF No. 151.4.)  Southgroup already owned this property, having bought it a year earlier with funds from other investors.  (*See* Defs.' Ex. 1, ECF No. 151.1; Rosso Dep. 147:19–149:24.)  The appraisal had been prepared for United Community Bank in 2010 and did not identify Southgroup as the owner.  (*See* Defs.' Ex. 4.)  Brown claims that Defendants never told him that they had acquired the property or that they intended to use his money to refinance it and pay their debt.  (*See* Brown Dep. 112:14–18, 130:3–16; Rosso Dep. 151:13–21.)  Without reading the appraisal or performing any other investigation, Brown approved the deal and, following Secor's instructions, wired nearly $400,000 to a law firm.  (*See* Brown Dep. 111:17–112:12, 112:23–113:10, 119:23–25; Pl.'s Ex. 20, ECF No. 154.21.)

8.      Over the next few weeks, Brown transferred another $1.4 million related to two more properties, called Nature's Courtyard and New River. (*See, e.g.*, Pl.'s Ex. 8, ECF No. 154.9.)   Secor provided a market summary for Nature's Courtyard that estimated "a sellout of $990k-$1,320,000." (Defs.' Ex. 3, ECF No. 151.3.)

9.      In June 2013, Secor e-mailed Brown a document titled Membership Interest Purchase Agreement ("MIPA").   That document purports to transfer to Brown an interest that Southgroup holds in an unnamed "single-purpose entity established for the development of" Black Bear Falls and Nature's Courtyard. (*See* Pl.'s Ex. 5, ECF No. 154.6.) As Secor put it, the MIPA is "the document that essentially signs over the company to [Brown] to be used as collateral in case of default." (Pl.'s Ex. 5.)  Although Brown did not read the MIPA, he took the view that it gave him ownership of Southgroup itself, not Southgroup's interest in a different single-purpose entity. (*See* Brown Dep. 18:10–13, 63:3–6, 69:20–70:13, 149:23–150:3.)  After receiving the MIPA, Brown transferred more funds. (*See, e.g.*, Brown Dep. 162:23–163:9; Pl.'s Ex. 3, ECF No. 154.4.)  That was Brown's last transfer.

10.     In late 2013, Defendants sold some lots in Nature's Courtyard for over $600,000, and in early 2015, they sold New River for about $1.6 million. (*See* Brown Dep. 29:16–21; Secor Dep. 314:2–7; Pl.'s Ex. 12, ECF No. 154.13.)   Brown did not receive proceeds from either sale but believes that he should have. (*See* Brown Dep. 50:10–51:14.)   He also claims that Defendants misled him or kept him in the dark about both sales.   When Brown inquired about the partial sale of Nature's Courtyard, Secor said they had recovered only marketing costs. (*See* Brown Dep. 29:16–30:18,

35:14–25.) Defendants did not tell him about the New River sale at all. (*See* Brown Dep. 40:13–18, 70:14–16; Secor Dep. 318:3–7.) And Brown has offered evidence that Secor and Rosso paid themselves at least $800,000 from the sales. (*See* Rosso Dep. 219:25–220:3, 223:23–224:7; Secor Dep. 432:12–433:17.)

11. Brown filed this suit to recover his investment. In his view, he should have received some amount from the Nature's Courtyard and New River sales. That he didn't, he contends, is a breach of the oral agreement and evidence of fraud. Defendants responded with their own counterclaims for breach of contract and fraud by Brown.

12. By amendment and stipulation of dismissal, the claims at issue have changed significantly over time. It bears noting that Brown initially asserted his claim for breach of contract against all Defendants. Because the amended complaint does not identify Rosso or Secor Group as a party to the oral agreement, the Court dismissed the claim against them. *See Brown v. Secor*, 2017 NCBC LEXIS 65, at *14 (N.C. Super. Ct. July 28, 2020). Brown continues to assert the contract claim against Secor and Southgroup, along with claims for unjust enrichment, fraud, facilitation of fraud, and securities fraud against all Defendants. (*See* Am. Compl. pp.9–10, 14–18, ECF No. 41.)

13. With discovery now closed, Defendants have moved for summary judgment on most of these claims and on Brown's request for a constructive trust. (*See* Defs.' Mot. Partial Summ. J., ECF No. 151.) Brown opposes that motion. In addition, he has moved to reinstate Secor Group as a defendant to his claim for breach of contract,

either through reconsideration of the Court's earlier ruling or through an amendment to conform the pleadings to the evidence. (*See* Pl.'s Mot. to Amend/Reconsider, ECF No. 157.)

14. These motions have been fully briefed. The Court held a hearing in July 2019, at which all parties were represented by counsel.

## II.
## ANALYSIS

15. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party," taking its evidence as true and drawing inferences in its favor. *Furr v. K-Mart Corp.*, 142 N.C. App. 325, 327, 543 S.E.2d 166, 168 (2001) (citations and quotation marks omitted).

16. The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002). If the moving party carries this burden, the responding party "may not rest upon the mere allegations or denials of his pleading," N.C. R. Civ. P. 56(e), but must instead "come forward with specific facts establishing the presence of a genuine factual dispute for trial," *Liberty Mut. Ins. Co.*, 356 N.C. at 579, 573 S.E.2d at 124. "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any

material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citing *Bone Int'l, Inc. v. Brooks*, 304 N.C. 371, 374–75, 283 S.E.2d 518, 520 (1981)).

## A. <u>Breach of Contract</u>

17. At the center of this case is the oral agreement that Brown and Secor negotiated in May 2013. Both sides concur that there was an agreement, but they dispute its terms, the parties to it, and which side breached it. Although Brown originally asserted his claim for breach against all Defendants, the Court dismissed the claim against Rosso and Secor Group because the amended complaint does not identify them as parties to the agreement. *See Brown*, 2017 NCBC LEXIS 65, at *12–14.

18. With discovery complete, the parties have revisited the confusion over who is bound by the oral agreement. Southgroup concedes that it is a party to the agreement and has not moved for summary judgment on that issue. Secor, however, denies that he was a contractual party and seeks summary judgment for that reason. (*See* Br. in Supp. 12–13, ECF No. 152.) Brown argues that the evidence of Secor's involvement is conflicting and, via his own motion, asks the Court to resurrect the claim against Secor Group. (*See* Opp'n 19–20, ECF No. 154; Pl.'s Mot. to Amend/Reconsider 1–2.)

19. **<u>Secor.</u>** It is undisputed that the agreement resulted from negotiations between Secor and Brown, but Secor contends that he negotiated on behalf of Secor Group and Southgroup, not on his own behalf. In support, he points to Brown's

testimony that "the contract wasn't with Art Secor personally. It was with Art Secor's company." (Brown Dep. 146:2–3.) This undisputed testimony, Secor contends, confirms that he is not a party to the oral agreement and cannot be liable for its breach.

20. The Court agrees. Brown's testimony does not "contradict itself" as he contends. (Opp'n 19–20.) Twice more, Brown confirmed his understanding that he was "not in an agreement with Art Secor personally." (Brown Dep. 291:5–6; *see also* Brown Dep. 299:11–15.) When a defendant is "not a party to the contract," then "as a matter of law he cannot be held liable for any breach that may have occurred." *Canady v. Mann*, 107 N.C. App. 252, 259, 419 S.E.2d 597, 601 (1992); *see also Stephenson v. Langdon*, 2010 N.C. App. LEXIS 1682, at *11–12 (N.C. Ct. App. Sept. 7, 2010) (unpublished) (affirming summary judgment when plaintiff "knew his oral agreement was not with [defendants] in their individual capacities").

21. The Court therefore concludes that Secor is entitled to summary judgment as to Brown's claim for breach of contract.

22. **Secor Group.** Brown asks the Court to reinstate his claim for breach of contract against Secor Group. He contends that the evidence establishes that Secor Group is a party to the oral agreement. On that basis, he seeks reconsideration of the earlier dismissal of the claim against Secor Group under Rule 54(b) or an amendment to conform the pleadings to the evidence under Rule 15(b). (*See* Pl.'s Mot. to Amend/Reconsider 1–2.)

23. New evidence is no reason to reconsider the earlier ruling. It is rudimentary that a court may not look outside the complaint when deciding a motion to dismiss. *See, e.g.*, *Jackson/Hill Aviation, Inc. v. Town of Ocean Isle Beach*, 251 N.C. App. 771, 775, 796 S.E.2d 120, 123 (2017). The amended complaint does not allege that Secor Group is a party to the oral agreement, and the Court dismissed the claim against it on that basis. *See Brown*, 2017 NCBC LEXIS 65, at *12–14. That decision was correct, and no amount of newly discovered evidence would have any bearing on what the allegations in the amended complaint say.

24. The Court is persuaded, however, that an amendment to conform the complaint to the evidence is appropriate. It is undisputed that Secor Group is a contractual party. (*See* Secor Dep. 151:16–22.) Indeed, Defendants say so in their briefs, seek dismissal of the claim against Secor on the ground that Secor Group was the proper party, cite Secor Group's agreement with Brown as a reason to dismiss the claim for unjust enrichment, and intend to prove at trial that Brown is liable to Secor Group for a breach of the agreement. (*See* Br. in Supp. 1, 12; Reply Br. 13, 14, ECF No. 159; Secor Dep. 179:2–180:5.) Although an amendment to conform to the evidence is usually reserved for trial, this is the unusual circumstance when the evidence at summary judgment justifies such an amendment. *See Stephenson v. Warren*, 136 N.C. App. 768, 771, 525 S.E.2d 809, 811 (2000) ("Where the evidence presented at a summary judgment hearing would justify an amendment to the pleadings, [courts] will consider the pleadings amended to conform to the evidence raised at the hearing."); *SiteLink Software, LLC v. Red Nova Labs, Inc.*, 2018 NCBC

LEXIS 90, at *15–16 (N.C. Super. Ct. Aug. 20, 2018) (treating complaint as conforming to the evidence at summary judgment); *Diverse Networks v. Time Warner Ent.-Advance/Newhouse P'ship*, 2012 NCBC LEXIS 3, at *12–15 (N.C. Super. Ct. Jan. 9, 2012) (same).

25. In its discretion, the Court therefore grants Brown's motion to amend his pleading to conform to the evidence. His claim for breach of contract shall proceed to trial against Southgroup and Secor Group.

B. Unjust Enrichment

26. Brown asserts his claim for unjust enrichment against all Defendants. "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Krawiec v. Manly*, 370 N.C. 602, 615, 811 S.E.2d 542, 551 (2018) (quoting *Atl. Coast Line R.R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96, 150 S.E.2d 70, 73 (1966)). But when the parties have made an express contract, the law will not imply one "with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962).

27. The question here is whether Brown's oral contract with Secor Group and Southgroup precludes his claim for unjust enrichment. Defendants contend that it does. (*See* Br. in Supp. 11–12.) Brown responds that the distribution of proceeds to Secor and Rosso after the sale of New River falls "wholly outside the subject matter" of the contract and is therefore fair game. (Opp'n 23.)

28.    In the amended complaint, the two claims mirror one another.  To show breach of the oral agreement, Brown alleges that he provided investment funds but did not receive his share of the profits as promised.  (*See* Am. Compl. ¶¶ 49, 50.)  To show unjust enrichment, Brown alleges that he "provided valuable consideration in the form of his payments to or for the benefit of" Southgroup and seeks "to recover the fair value of his investment and his share of the returns of" Southgroup.  (Am. Compl. ¶ 70.)  Both claims arise from the same agreement and the same transactions.  So does the alleged distribution of proceeds to Secor and Rosso.  One purpose of the oral agreement was to address how Brown, Secor Group, and Southgroup would split the proceeds from their real estate deals.  If proceeds that should have gone to Brown were instead paid to Secor and Rosso, that might establish a breach of the contract, but it does not give rise to an implied contract with additional or different terms on the same matter.  *See Vetco Concrete*, 256 N.C. at 715, 124 S.E.2d at 909 (holding that express contract precluded unjust enrichment claim against noncontracting parties based on the same subject matter).

29.    As a fallback, Brown contends that he should be allowed to plead the two claims in the alternative.  (*See* Opp'n 22.)  Not so.  The existence of the oral agreement "is no longer an alternative theory advanced by [Brown] but an undisputed fact" that supports entry of summary judgment.  *In re. Se. Eye Ctr.-Pending Matters*, 2019 NCBC LEXIS 29, at *108 (N.C. Super. Ct. May 7, 2019) (citation omitted); *see also Catoe v. Helms Constr. & Concrete Co.*, 91 N.C. App. 492, 498, 372 S.E.2d 331, 335

(1988) ("[I]t is error to submit an alternative implied contract claim to the jury when an express contract has been proved.").

30. The Court therefore grants summary judgment in favor of Defendants as to the claim for unjust enrichment.

## C. Fraud

31. Fraud requires evidence of a false representation of a material fact that was calculated to deceive, was made with intent to deceive, did in fact deceive, and resulted in damage to the injured party. *See Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992). When "there is a duty to speak," concealment of a material fact "is equivalent to fraudulent misrepresentation." *Griffin v. Wheeler-Leonard & Co., Inc.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976).

32. "Actual reliance is demonstrated by evidence plaintiff acted or refrained from acting in a certain manner due to defendant's representations" or omissions. *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 663, 464 S.E.2d 47, 57 (1995). A plaintiff's reliance "must be reasonable" too. *Cobb v. Pa. Life Ins. Co.*, 215 N.C. App. 268, 277, 715 S.E.2d 541, 549 (2011). Ordinarily, "[r]eliance is not reasonable where the plaintiff could have discovered the truth of the matter through reasonable diligence, but failed to investigate." *Id.*

33. Defendants identify six misrepresentations and omissions in the amended complaint and contend that all have shortcomings. (*See* Br. in Supp. 4–11.) Although Brown insists that Defendants "attack limited aspects of the fraud claims," he doesn't

say what they left out. (Opp'n 9.) The Court concludes that Defendants have challenged all the misrepresentations and omissions fairly raised by the amended complaint.

34. **<u>Oral Agreement.</u>** First, Brown alleges that the oral agreement itself was a sham. He contends that Defendants had no intent to carry out their promise to pay back his investment plus profits at the time that Secor negotiated the arrangement. (*See* Am. Compl. ¶¶ 74, 78.)

35. "To support a claim for fraud, a false representation must relate to a past or existing fact." *Potts v. KEL, LLC*, 2018 NCBC LEXIS 24, at *8 (N.C. Super. Ct. Mar. 27, 2018). Usually, "an unfilled promise cannot be made the basis for an action for fraud." *Pierce v. Am. Fidelity Fire Ins. Co.*, 240 N.C. 567, 571, 83 S.E.2d 493, 496 (1954). "The rule, however, is otherwise if the promise is made with no intention to carry it out . . . ." *Id.*; *see also Braun v. Glade Valley School, Inc.*, 77 NC. App. 83, 87, 334 S.E.2d 404, 407 (1985). In that case, "the 'misrepresentation of the state of the promisor's mind' is itself a misrepresentation of an existing fact, subject to a claim for fraud." *Potts*, 2018 NCBC LEXIS 24, at *9 (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 452, 279 S.E.2d 1, 6 (1981)); *see also Cofield v. Griffin*, 238 N.C. 377, 381, 78 S.E.2d 131, 134 (1953) ("The state of any person's mind at a given moment is as much a fact as the existence of any other thing.").

36. Defendants argue, first, that the claim is bound up with the alleged breach of contract and therefore barred by the economic loss rule. (*See* Br. in Supp. 4–5.) Our "Court of Appeals has rejected this argument. The economic loss rule does not

bar claims for fraudulent inducement." *Haigh v. Superior Ins. Mgmt. Grp.*, 2017 NCBC LEXIS 100, at \*24 (N.C. Super. Ct. Oct. 24, 2017) (citing *Bradley Woodcraft, Inc. v. Bodden*, 251 N.C. App. 27, 34, 795 S.E.2d 253, 259 (2016)); *see also Provectus Biopharms., Inc. v. RSM US LLP*, 2018 NCBC LEXIS 101, at \*51 (N.C. Super. Ct. Sept. 28, 2018) ("[T]he Court notes that the economic loss rule does not apply to [plaintiff's] fraud claims." (citing *Bradley Woodcraft*)).

37. Next, Defendants contend that there is no evidence of fraudulent intent. (*See* Br. in Supp. 5.) They point to a single excerpt from Brown's deposition testimony. There, Brown was asked if he had "any evidence as to [Defendants'] state of mind," and he answered "[n]o evidence, no." (Brown Dep. 21:1–3.) According to Defendants, this is a binding admission and fatal to Brown's claim. (Br. in Supp. 5; Reply Br. 3.)

38. That might be true if there were no other evidence to support Brown's allegations. *See Woods v. Smith*, 297 N.C. 363, 374–75, 255 S.E.2d 174, 181–82 (1979) (concluding that plaintiff's adverse testimony was not binding when contradicted by other evidence). Here, though, Brown has offered evidence that Defendants earmarked his funds to pay off debts to other investors, did not establish a plan or schedule for repaying him, and used proceeds from the land sales to pay themselves and family members. (*See* Secor Dep. 92:11–22, 326:2–16; Rosso Dep. 111:11–16, 151:13–21, 222:11–18, 223:23–224:7, 235:24–237:3.) Some evidence also suggests that Defendants misrepresented the amount of the Nature's Courtyard sale and never reported the New River sale at all. (*See, e.g.*, Brown Dep. 29:22–30:18, 35:18–

25, 40:17–18, 70:14–17.) And when Brown asked about the sales, Secor dodged his questions. (*See, e.g.*, Brown Dep. 12:1–10, 186:2–13.)

39. Viewed in the light most favorable to Brown, this evidence of concealment, evasion, and ulterior motives may suggest fraudulent intent. It is therefore a fact question for the jury. *See Latta v. Rainey*, 202 N.C. App. 587, 600, 689 S.E.2d 898, 909 (2010) ("Whether the defendant acts with the requisite scienter for fraud is generally a question of fact for the jury."); *Sports Quest, Inc. v. Dale Earnhardt, Inc.*, 2004 NCBC LEXIS 10, at *12–13 (N.C. Super. Ct. Mar. 12, 2004) (denying summary judgment as to fraud claim because "motivations behind [defendant's] action [were] unclear").

40. **Black Bear Falls.** Within days of finalizing the oral agreement, Secor and Brown discussed a deal involving Black Bear Falls. Brown transferred nearly $400,000, which he believed Defendants would use to acquire the property. In reality, he says, they had bought it years earlier with funds from other investors who were demanding their money back with interest. Brown claims that Defendants fraudulently concealed their plan to use his funds to buy out the other investors. (*See* Am. Compl. ¶ 13.)

41. Defendants contend that Brown cannot show reasonable reliance on the alleged omission. (*See* Br. in Supp. 8–10.) They cite public records identifying Southgroup as the owner of Black Bear Falls and disclosing its debt. (*See* Defs.' Ex. 1; Defs.' Ex. 2, ECF No. 151.2.) They also cite admissions by Brown that he made no investigation. (*See* Brown Dep. 111:14–18, 112:23–113:10.)

42.    Brown does not dispute this evidence, nor does he contend that he could not have discovered the truth through reasonable diligence.  Rather, he contends that no investigation was required.  The law will excuse a plaintiff's failure to investigate for a few reasons, including when the plaintiff "was denied the opportunity to investigate" and when the defendant induced the plaintiff to forgo an investigation. *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 746, 600 S.E.2d 492, 499 (2004) (citation and quotation marks omitted).  Brown advances both grounds.

43.    As evidence that he was denied the opportunity to investigate, Brown points to the "timing of the wire," observing that just three days elapsed between Secor's solicitation and the transfer of funds.  (Opp'n 16.)  But Brown offers no evidence that this was too little time to search public records or that he would have performed a search if he had more time.  In his own words, he "[n]ever thought about it."  (Brown Dep. 113:1.)  This evidence does not allow a reasonable inference that Brown was denied the chance to investigate.

44.    Next, Brown argues that Defendants induced him to forgo an investigation by sending two documents—a developer summary and an appraisal—that identify United Community Bank as the property owner.  (*See* Defs.' Ex. 4; Pl.'s Ex. 9, ECF No. 154.10.)  Brown wired the funds before receiving the developer summary and, in any event, did not read it.  (*See* Brown Dep. 131:8–12 ("Q. Okay.  You had just testified that when you got the developer summary for Black Bear Falls, you didn't even read it.  A. No, because I'd already bought the property.  What's it matter.  I'd already

bought it, paid for it.").) Nor did he read the appraisal. (*See* Brown Dep. 119:21–25 ("Q. So you knew there was a bank and you knew that at one time it was owned by United Community Bank; right? A. I want to tell you something, I never read this whole appraisal, never went through it. I don't know. I really don't.").) No reasonable jury could conclude that either document induced Brown to forgo an investigation before transferring funds.

45. For the first time in his opposition brief, Brown also argues that Secor "made affirmative false representations regarding [Black Bear Falls] being a *purchase* from a bank." (Opp'n 15 (emphasis in original).) The amended complaint does not allege that Secor or any other Defendant made affirmative misrepresentations about Black Bear Falls, much less with the particularity required for fraud claims. *See* N.C. R. Civ. P. 9(a). This unasserted theory of liability is no defense to summary judgment. *See Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at *42–43 n.15 (N.C. Super. Ct. Feb. 27, 2015).

46. Moreover, Brown gives no citation to evidence supporting the alleged misrepresentation. (*See* Opp'n 15.) Presumably, it has to do with a conversation between Secor and Brown before the wire transfer. Told to wire funds to a law firm far away from Black Bear Falls, Brown asked why. (*See* Brown Dep. 112:18–19.) He testified that Secor responded either "That's where the lawyers are that are working with the bank that we're buying it from" or "Because that's the people paying the bank off." (Brown Dep. 112:20–21, 118:8–9.) Brown further testified that Secor "didn't tell me who owned the property. He just said they're paying the bank."

(Brown Dep. 119:6–7.) This appears to be an admission that Secor did not say who owned the property. And in any event, Brown offers no reason that Secor's vague statements about an unnamed bank dissuaded him from investigating. *See In re. Se. Eye Ctr.-Pending Matters*, 2019 NCBC LEXIS 29, at \*65, 69 (granting summary judgment due to failure to investigate "when faced with, at best, vague statements").

47. Having failed to make any investigation, Brown did not reasonably rely on omissions about the ownership of Black Bear Falls. No reasonable jury could conclude otherwise. *See Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346–47, 511 S.E.2d 309, 313 (1999) (affirming dismissal of fraud claim based on failure to investigate public records); *see also Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 162–64, 796 S.E.2d 827, 832–33 (2017) (affirming summary judgment for failure to investigate); *Island Beyond, LLC v. Prime Cap. Grp., LLC*, 2013 NCBC LEXIS 48, at \*20–21 (N.C. Super. Ct. Oct. 30, 2013) (dismissing fraud claim when investigation of public records "would have revealed the true ownership of" property development).

48. **MIPA.** By June 2013, Brown had transferred nearly $1.8 million. He advanced another $400,000 after receiving the MIPA from Secor. In the cover e-mail, Secor stated that the MIPA "essentially signs over the company to [Brown] to be used as collateral in case of default." (Pl.'s Ex. 5.) Brown alleges that he understood this to mean that he would own Southgroup and that Secor's representation was false. (*See* Am. Compl. ¶¶ 21, 22, 76.)

49. As the Court explained in an earlier decision, the MIPA does not purport to give Brown an interest in Southgroup. It states that Southgroup owns a 100%

membership interest in an unnamed "Company" and purports to transfer that interest to Brown. (*See* Pl.'s Ex. 5.) "There is no plausible way to construe this language to mean that Brown obtained a membership interest in Southgroup, as he contends." *Brown*, 2017 NCBC LEXIS 65, at *15–16. Brown has not identified any representation in the MIPA to the contrary. Nor has he cited evidence to show that Secor misrepresented the terms of the MIPA by stating that Brown would become the sole owner of Southgroup.

50. Furthermore, in his deposition, Brown conceded that he "didn't read" the MIPA and instead relied on his son-in-law's incorrect understanding of it. (Brown Dep. 149:23–150:3.) His decision to advance funds based on a document he did not read or understand "must be attributed to his own negligence." *Griggs v. Griggs*, 213 N.C. 624, 627, 197 S.E. 165, 167 (1938) (dismissing fraud claim due to plaintiff's failure to read and understand deed). Thus, even assuming that Secor misrepresented the terms of the document, Brown's failure to read it amounts to "unjustifiable reliance." *Cobb*, 215 N.C. App. at 277, 715 S.E.2d at 549–50 (affirming summary judgment); *see also McGuire v. LORD Corp.*, 2020 NCBC LEXIS 15, at *15 (N.C. Super. Ct. Feb. 11, 2020) (concluding that corporate officer's failure to read stock incentive plan made it unreasonable to rely on contrary statements about the plan); *Crockett Cap. Corp. v. Inland Am. Winston Hotels, Inc.*, 2011 NCBC LEXIS 7, at *72 (N.C. Super. Ct. Feb. 28, 2011) (granting summary judgment on the ground that plaintiff's reasonable diligence "should have included at least an inspection of the documents in its possession"). The Court therefore concludes that there is no

triable issue concerning allegedly fraudulent statements regarding the interest transferred to Brown by the MIPA.

51. **Nature's Courtyard.** Brown also alleges that he received a fraudulent market summary related to Nature's Courtyard. The summary includes the following statement: "Project can be flipped. Prelim: at a $30k-$40k lot average we have a sellout of $990k-$1,320,000." (Defs.' Ex. 3.) Defendants contend that this is no more than a prediction or statement of opinion that cannot support a fraud claim. (*See* Br. in Supp. 6–7.) They rely on Brown's testimony that the marketing summary gave a preliminary figure, not a representation that the sale would, in fact, obtain the stated sellout amount. (*See* Brown Dep. 132:1–19.)

52. It was Brown's "responsibility to rebut these arguments by identifying the evidence that supports his claim and articulating how that evidence creates a genuine issue of material fact for trial." *Brewster v. Powell Bail Bonding, Inc.*, 2020 NCBC LEXIS 27, at *9 (N.C. Super. Ct. Mar. 11, 2020). He has not done so. His opposition includes a passing reference to the " 'sellout' value" of Nature's Courtyard but does not explain why it is fraudulent or give a forecast of evidence that Defendants believed the prediction to be false at the time they made it. (Opp'n 17.) The Court therefore concludes that there is no triable issue concerning statements in the Nature's Courtyard market summary.

53. **Other Alleged Omissions.** It appears that Brown has abandoned the other two bases for his fraud claim. The amended complaint alleges that Secor failed to disclose his partnership with Rosso before finalizing the oral agreement and that

Defendants failed to keep Brown informed about his investments after he made them. (*See, e.g.*, Am. Compl. ¶¶ 9, 23, 25, 32.)  Defendants argue that Secor had no duty to disclose his partnership with Rosso and that Brown has no evidence that he was damaged by the omission.  (*See* Brown Dep. 263:21–23.)  They further argue that, having made all his investments as of July 23, 2013, Brown cannot show actual reliance on representations or omissions after that date.  (*See* Br. in Supp. 10–11.) Brown offers no response.  The Court therefore concludes that there is no genuine issue of material fact concerning alleged omissions regarding the partnership with Rosso or representations and omissions allegedly made after July 23, 2013.  *See Brewster*, 2020 NCBC LEXIS 27, at *9; *see also Bucci v. Burns*, 2020 NCBC LEXIS 79, at *17 (N.C. Super. Ct. June 30, 2020) ("Having offered no argument about or evidence of the [alleged] misrepresentation, Plaintiffs have abandoned it.").

54.    **Rosso's Involvement.**  In their reply brief, Defendants contend that Rosso is entitled to summary judgment as to the fraud claim even if Secor, Secor Group, and Southgroup are not.   Their argument is that Rosso was not a "party to the communications" related to the oral agreement.  (Reply Br. 6.)

55.    The Court disagrees for three reasons.  First, our courts disfavor arguments made for the first time in a reply brief.  *See Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 707–08, 682 S.E.2d 726, 740 (2009); *Addison Whitney, LLC v. Cashion*, 2020 NCBC LEXIS 72, at *49 (N.C. Super. Ct. June 10, 2020); *Potts v. KEL, LLC*, 2019 NCBC LEXIS 30, at *30 n.4 (N.C. Super. Ct. May 9, 2019).

56.     Second, in a sur-reply, Brown pointed to evidence of Rosso's involvement. Rosso testified, for example, that he participated in the meeting with Secor and Brown that led to the oral agreement. (*See* Rosso Dep. 125:21–24.)

57.     Third, Brown claims that Rosso conspired with the other Defendants and facilitated their fraud even if he did not directly commit the fraud himself. (*See* Am. Compl. ¶¶ 97–100.) The law permits one defrauded to recover from anyone who facilitated the fraud by agreeing for it to be accomplished. *See Nye v. Oates*, 96 N.C. App. 343, 346–47, 385 S.E.2d 529, 531 (1989). Defendants say there's no evidence of an agreement to defraud Brown. But again, Rosso testified that he met with Secor and Brown to discuss their business relationship. In addition, both before and after meeting Brown, Rosso worked closely with Secor in their real estate development business. This included the acquisition of Black Bear Falls and the plan to repay the debt related to that property with Brown's investments. (*See* Secor Dep. 82:5–6; Rosso Dep. 147:19–148:6.) Later, after selling New River, Secor and Rosso split $800,000 of the proceeds. (*See* Secor Dep. 432:12–433:14; Rosso Dep. 111:11–16, 219:25–220:3, 223:23–224:7; *see also* Pl.'s Ex. 8.) Viewed in the light most favorable to Brown, this evidence supports more than "mere suspicion or conjecture" of an agreement to defraud. *TaiDoc Tech. Corp. v. OK Biotech Co.*, 2016 NCBC LEXIS 26, at \*31, 33–35 (N.C. Super. Ct. Mar. 28, 2016) (quoting *Dickens v. Puryear*, 302 N.C. 437, 456, 276 S.E.2d 325, 337 (1981)).

58.     **Summary.** In sum, Brown has offered enough evidence to establish a genuine issue of material fact regarding his allegation that Defendants did not intend

to abide by the oral agreement at the time it was made. He has not offered enough evidence to create a triable issue as to any other alleged misrepresentation and omission. With that limitation, the claims for fraud and facilitation of fraud against all Defendants, including Rosso, shall proceed to trial.

## D. Securities Violations

59. The North Carolina Securities Act ("NCSA") "regulates transactions involving securities." *NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC LEXIS 11, at *21 (N.C. Super. Ct. Feb. 19, 2013), *aff'd*, 261 N.C. App. 185, 820 S.E.2d 322 (2018). It also "creates private rights of action that are complementary to federal securities schemes." *Piazza v. Kirkbride*, 246 N.C. App. 576, 595, 785 S.E.2d 695, 707 (2016), *aff'd in part and modified in part on other grounds*, 372 N.C. 137, 827 S.E.2d 479 (2019).

60. "Liability for securities violations may be either primary or secondary." *Bucci*, 2020 NCBC LEXIS 79, at *38 (citation and quotation marks omitted). There are two pathways to primary liability, both applicable to those who offer or sell a security. *See* N.C.G.S. § 78A-56(a)(1), (2). Section 78A-56(a)(1) targets conduct "comparable to common law fraud." *Highwoods Realty*, 2013 NCBC LEXIS 11, at *29; *see also Tillery Env't LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS 13, at *61 (N.C. Super. Ct. Feb. 9, 2018). Section 78A-56(a)(2) centers on sales of a security "by means of any untrue statement of a material fact," N.C.G.S. § 78A-56(a)(2), but "does not additionally require proof of scienter or justifiable reliance," *Highwoods Realty*, 2013 NCBC LEXIS 11, at *37. If primary liability exists for a given security

transaction, individuals who "materially aided" the transaction may be secondarily liable under section 78A-56(c). *Bucci*, 2020 NCBC LEXIS 79, at \*39 (citation and quotation marks omitted).

61. Brown's claim for securities violations is premised on the same representations and omissions as his fraud claim. His theory is that the oral agreement is an "investment contract" and therefore a security under N.C.G.S. § 78A-2(11). (Am. Compl. ¶ 82.) Likewise, he alleges that the membership interest purportedly transferred in the MIPA is also a security. (*See* Am. Compl. ¶ 83.) On that basis, Brown claims that Defendants are liable under the NCSA for their alleged fraud.

62. In their opening brief, Defendants treat this claim as an afterthought. They argue, in just three sentences, that the oral agreement cannot be a security because Brown does not consider a different profit-sharing agreement that he has with his son-in-law to be a security. (*See* Br. in Supp. 11.) In an even shorter argument, Defendants contend that "[t]he securities claim should also be dismissed for the same reasons that the fraud claim should be dismissed . . . ." (Br. in Supp. 11.)

63. Neither argument requires complex analysis. On the definition of a security, what Brown thinks about some other agreement is beside the point, and in any event, Defendants cite no case or statute to support their position. They have not carried their "initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins.*, 356 N.C. at 579, 573 S.E.2d at 124.

64.     The point about the overlap between the fraud claim and the securities claim has some merit because section 78A-56(a)(1) addresses conduct akin to common-law fraud. The rulings above therefore apply equally to the claim for primary liability under that section. A jury must decide whether Defendants entered into the oral agreement with no intent to carry it out, but there are no genuine issues of material fact regarding whether the other alleged misrepresentations and omissions support a claim for securities fraud under section 78A-56(a)(1).

65.     That is not the end of the matter. Brown argues that he has also claimed primary liability under section 78A-56(a)(2), which does not require proof of reasonable reliance, as well as secondary liability under section 78A-56(c). (*See* Opp'n 17 & n.10.) Defendants contend in the reply brief that these theories do not appear in the amended complaint and are ripe for summary judgment even if they do. (*See* Reply Br. 7–8, 10–12.) The Court allowed Brown a sur-reply to respond to these belated arguments. *See Addison Whitney*, 2020 NCBC LEXIS 72, at *49 (observing that arguments first raised in reply are disfavored); *Potts*, 2019 NCBC LEXIS 30, at *30 n.4 (same). Given the tighter word limits for replies, the briefing on both sides is terse and occasionally unclear.

66.     The first question is whether the amended complaint alleges these theories. The claim is titled "Securities Fraud under N.C.G.S. § 78A-8." (Am. Compl. p.16.) Section 78A-8 is closely tied to section 78A-56. The former makes it unlawful to defraud a person (subsections (1) and (3)) or to misrepresent or omit material facts (subsection (2)) to a person in connection with the sale of a security. The latter, in

turn, imposes civil liability for violations of section 78A-8. This is clear from the text of section 78A-56(a)(1), which imposes primary liability based on alleged fraud under sections 78A-8(1) and (3). Our Court of Appeals has observed that sections 78A-56(a)(2) and 78A-8(2) relate in a similar fashion. *See Latta v. Rainey*, 202 N.C. App. 587, 598, 689 S.E.2d 898, 908 (2010); *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 40–41, 626 S.E.2d 315, 322 (2006). Defendants offer no reason that the reference to section 78A-8, combined with allegations of false statements and omissions, is enough to support a claim under section 78A-56(a)(1) but not under section 78A-56(a)(2). The Court concludes that the amended complaint alleges primary liability under either section.

67. Likewise, section 78A-56(c) imposes secondary liability on those who materially aid transactions in violation of section 78A-56(a) and, thus, section 78A-8. This includes "every partner, officer, or director" of a person primarily liable under section 78A-56(a) and anyone who "controls a person" primarily liable under that section. N.C.G.S. § 78A-56(c)(1), (2). The amended complaint includes allegations of the Defendants' legal relationships with one another and their participation in the allegedly fraudulent scheme. (*See, e.g.*, Am. Compl. ¶¶ 3, 9–11, 99.) Defendants do not address these allegations or explain why they are insufficient to give notice of a theory of secondary liability. (*See* Reply Br. 10–12.)

68. The next question is whether any alleged representation or omission that does not support a claim under section 78A-56(a)(1) would nevertheless support a claim under section 78A-56(a)(2). As discussed above, there is evidence that

Defendants did not tell Brown that they had acquired Black Bear Falls using other investors' money and intended to use his funds to refinance the property. (*See* Rosso Dep. 147:19–149:24, 151:13–21.) Although the undisputed evidence shows that Brown did not reasonably rely on that omission, reasonable reliance is not required under section 78A-56(a)(2). Defendants contend that the claim fails for other reasons—lack of a duty to disclose and materiality—but offer minimal argument in support. (*See* Reply Br. 9–10.) On this record, Defendants have not shown that they are entitled to summary judgment for those reasons.

69. This is not so for representations in the MIPA or in the market summary for Nature's Courtyard. Brown says that he believed that "he would have an interest in Southgroup per the MIPA and the emails accompanying the MIPA," (Opp'n 15), but no representation of that sort appears in the documents, (*see, e.g.*, Pl.'s Ex. 5). If Brown has other evidence that Secor misrepresented the terms of the MIPA, he has not cited it. (*See* Opp'n 14–15.) As to Nature's Courtyard, Brown admitted that the sellout value was a prediction, not a representation of fact. (*See* Brown Dep. 132:1–19.) Absent a misrepresentation, he cannot prevail under section 78A-56(a)(2). The Court therefore concludes that the MIPA and the Nature's Courtyard market summary cannot support a claim for primary liability.

70. As a final matter, Defendants argue in conclusory fashion that there is no evidence of material aid to support a theory of secondary liability. (*See* Reply Br. 12.) This is not enough to carry their burden to show an absence of any genuine issue of material fact. *See Liberty Mut. Ins.*, 356 N.C. at 579, 573 S.E.2d at 124. It bears

noting, though, that there can be no secondary liability without a finding of primary liability.

71. For these reasons, the Court concludes that Brown's claim for securities violations shall proceed to trial. There are genuine issues of material fact concerning whether Defendants intended to abide by the terms of the oral agreement at the time it was made. That alleged misrepresentation supports a claim for primary liability under either section 78A-56(a)(1) or (a)(2) and for secondary liability under section 78A-56(c). In addition, there are genuine issues of material fact concerning the omissions related to Black Bear Falls and whether those omissions support primary liability under section 78A-56(a)(2) and for secondary liability under section 78A-56(c). Brown has not offered sufficient evidence of primary or secondary liability based on any other misrepresentation or omission.

### E. Constructive Trust

72. In addition to damages, Brown seeks to impose a constructive trust. A constructive trust is an equitable remedy imposed "to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 530, 723 S.E.2d 744, 751 (2012) (citation and quotation marks omitted).

73. Whether Defendants defrauded Brown is a question for the jury, as discussed above. Thus, Defendants are not entitled to summary judgment on that ground, as they contend. (*See* Br. in Supp. 15–16.)

74. Nor are Defendants entitled to summary judgment on the ground that Brown has an adequate remedy at law. (*See* Br. in Supp. 13–15.) Depending on the circumstances, a plaintiff may be entitled to a constructive trust even when money is the object and even when a jury awards damages. *See, e.g.*, *Variety Wholesalers*, 365 N.C. at 531–32, 723 S.E.2d at 752–53 (reversing summary judgment as to funds in commingled account); *Speight v. Branch Banking & Tr. Co.*, 209 N.C. 563, 566, 183 S.E. 734, 736 (1936) ("Equity applies the principles of constructive trusts wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."); *Perkins v. HealthMarkets, Inc.*, 2007 NCBC LEXIS 25, at \*24–25 n.7 (N.C. Super. Ct. July 30, 2007) ("[I]t appears that North Carolina law allows a claim for constructive trust, even where the property sought to be impressed is a fungible asset." (citing *Tractor & Auto Supply Co. v. Fayetteville Tractor & Equip. Co.*, 2 N.C. App. 531, 543, 163 S.E.2d 510, 517 (1968)).

75. To be sure, "[a]fter fact finding regarding the underlying events in this case, 'the ultimate decision whether to impose a constructive trust as an equitable remedy would rest in the discretion of the trial court.' " *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at \*34 (N.C. Super. Ct. Dec. 7, 2015) (quoting *Variety Wholesalers*, 365 N.C. at 531, 723 S.E.2d at 752). If the facts show that an adequate remedy at law exists, that may counsel against imposing a constructive trust. *See Alkemal Sing. Priv. Ltd. v.*

*Dew Glob. Fin., LLC*, 2018 NCBC LEXIS 36, at \*52 (N.C. Super. Ct. Apr. 19, 2018) (concluding, after bench trial, that plaintiff had an adequate remedy at law and denying constructive trust). This decision is better made with a more complete record and guidance from the factfinder.

76. The Court therefore denies the motion for summary judgment as to the request for constructive trust.

IV.
CONCLUSION

77. For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion for summary judgment and **ORDERS** as follows:

a. Brown's claims for breach of contract against Secor and for unjust enrichment against all Defendants are **DISMISSED** with prejudice.

b. The claims for fraud, facilitation of fraud, and securities violations shall proceed to trial with the limitations stated above.

c. The request for a constructive trust shall proceed to trial.

78. The Court also **GRANTS** Brown's motion to amend his pleading to conform to the evidence. The claim for breach of contract against Secor Group shall proceed to trial. In all other respects, that motion is **DENIED**.


**SO ORDERED**, this the 13th day of November, 2020.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases